LETZ, Respondent, *v.* LAMPEN, Appellant.

(No. 8,042.)

(Submitted April 23, 1940. Decided June 6, 1940.)

[104 Pac. (2d) 4.]

*Mr. G. G. Harris,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. D. W. Doyle* and *Mr. E. E. Sweitzer,* for Respondent, submitted an original and a supplemental brief; *Mr. Doyle* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an action to recover damages for breach of a written farming agreement. The contract, described by the parties as a farm lease, was entered into between plaintiff and defendant November 1, 1935. Its terms embodied the usual provisions characterizing such arrangements, that is, the party of the second part, plaintiff and respondent here, agreed to finance and carry on all farming operations at his own expense, looking for his compensation in a division of the crop produced. With respect to cultivation and planting the agreement provided: "The party of the second part hereby agrees to plow and plant to wheat, eighty (80) acres of above described land and to summer fallow the remaining eighty (80) acres all in the spring of 1936 and to alternate the planting and summer fallowing of the above described land the following year, thus planting eighty acres and summer fallowing eighty acres each year this lease is in force." Under the general provisions of the contract appears the clause: "It is agreed that the portion of the grain hereby agreed to be paid to second party is in consideration of the full performance of all his obligations under this agreement."

The concluding part of the contract contains the following language: "It is mutually understood and agreed between both parties to this lease that in case this lease is not renewed at the time of expiration, or should the party of the first part sell the premises leased prior to November 1st, 1937, then the party of the second part is to be reasonably compensated for any work done on the land for which he has not been compensated."

Plaintiff farmed the land pursuant to the written agreement during 1936 and 1937. In 1937 he summer-fallowed 74.5 acres in preparation for the 1938 planting. The contract was not renewed with plaintiff and another person took over farming operations in 1938. Under these circumstances plaintiff instituted this action to recover compensation for his 1937 summer-fallowing. He prevailed in the district court, and defendant is here on an appeal from the judgment.

The main contention urged by defendant is that, due to the provisions that the plaintiff would summer-fallow 80 acres and plant 80 acres of the land each year, and the provision that the portion of the grain agreed to be paid to plaintiff was to be in consideration of the full performance of his obligation under the contract, the last paragraph of the contract with respect to reasonable compensation for any work done on the land for which he had not been compensated has no bearing on this case. This contention is predicated on the premise that plaintiff, by receiving a share of the crop due him each year, was compensated in full—including compensation for the summer-fallowing which was left upon the land at the termination of the contract. This argument tenders the important question to be determined on this appeal; namely, whether under the terms of the contract plaintiff is entitled to a reasonable compensation for the summer-fallowing he did in 1937, in addition to the share of the crops he received in 1936 and 1937.

The record shows that plaintiff first farmed the land in 1934, but does not show under what agreement he worked. His uncontradicted testimony was that there was no summer-fallowing on the land at the time he first started farming it. The terms of the agreement now before us took effect November 1, 1935. What was the intention of the parties?

In arriving at the intention of the parties to a contract we are aided by the rules of interpretation embodied in sections 7527, 7532, 7538, 7540, 7541, 7543 and 7545 of the Revised Codes. With these rules in mind, we now consider the situation and circumstances of the parties as they existed November 1, 1935, the date the agreement was entered into.

As before noted, when plaintiff commenced farming the land in 1934, there was no summer-fallowing on it. Including the year 1934 and thereafter up to 1937 plaintiff summer-fallowed half of the land and planted the other half, and when the present agreement started there were approximately 80 acres of such summer-fallowed land.

It is plain from the wording of the last paragraph of the agreement that at the time of its execution the parties

contemplated a renewal thereof. That clause was obviously inserted in order to protect the plaintiff in the event that it was not renewed, to the extent of reasonable compensation for any summer-fallowing which was left on the land. This is not an unusual provision in such agreements as this. As a matter of fact, it is common knowledge—in farming communities at least —that summer-fallowing is the working of the land during the spring and summer of one year so as to destroy weeds and conserve moisture in order to be able to raise a crop upon it during the following year. A farmer does not and cannot derive any benefit from his summer-fallowing until he harvests and sells the crop raised therefrom a year or more after he has summer-fallowed it. What was said by this court in *Hall* v. *Hilling*, 107 Mont. 432, 439, 86 Pac. (2d) 648, 651, in discussing an agreement of almost identical terms to the instant one, is pertinent at this point: "The agreement never contemplated that he should be paid any cash for his work in preparing the ground for the next year's crop, except, of course, where some disposition was made of the property after the work had been done. He was always expected to get his pay for work and materials furnished out of the subsequent year's crop. If, on the other hand, a new tenant were sought to be placed on the land and who would naturally benefit from any summer-fallowing already done, the owner was obliged to compensate Hilling [the tenant] in some way as was provided in the agreement in case a sale of the premises was made."

And so it is in the present case. Plaintiff's contract not being renewed, the ultimate fruits of his 1937 summer-fallowing labors were lost to him, he being thereby prevented from sowing a crop thereon in 1938. In lieu thereof, certainly plaintiff was entitled to a reasonable compensation for his labors. If that was not the intention of the parties, then the last paragraph of the agreement could have no meaning whatever. That paragraph provides that in case the lease be not renewed at the time of its expiration, the plaintiff should be reasonably compensated for any work done on the land for which he had not been compensated. It must be remembered that the only work

482

to be done on the land under the agreement by the plaintiff was to plant 80 acres each year and to summer-fallow the remaining 80. The provision for compensating plaintiff for work done and for which he had not been compensated at the end of the contract could not have referred to the planting of the 80 acres, and it could not have pertained to anything but the summer-fallowing. If plaintiff carried out the terms of the agreement, it naturally followed that there would be the summer-fallowing on the 80 acres from which the plaintiff could never receive any benefit in the absence of a renewal of the agreement, or payment for his work in lieu of the opportunity to reap a harvest from the land so summer-fallowed.

Counsel for defendant argues that the provision of the agreement providing for reasonable compensation to plaintiff only meant compensation for work and improvements other than the summer-fallowing of the 80 acres each year. For instance, he suggests that "if plaintiff had built a house upon the premises, particularly at the suggestion of plaintiff [defendant?] or had summer-fallowed ninety acres (if ninety acres had been available for that purpose), then he would be entitled to compensation for building the house, and would have been entitled to compensation for the ten acres of summer-fallow over and above what he had been required to do." Clearly, such could not have been the intention of the parties, or the agreement would have been otherwise worded. Nothing in the record could be construed as lending support to such a suggestion. Any such activities on the part of plaintiff would certainly have constituted a breach of the contract on his part.

Under section 7532, Revised Codes, the contract is to be read as a whole, and not by particular paragraphs or sentences. If effect is given to the last paragraph thereof it can have no meaning excepting as we have here interpreted it. Taking into consideration the circumstances of the case, as permitted by section 7538, no conclusion seems possible other than that contended for by plaintiff. By virtue of sections 7540 and 7545, resultant ambiguities, if any there be, should be construed against defendant.

Assigned as error is the court's action in denying defendant's motion for nonsuit. In his brief counsel for defendant puts the matter thus: "The evidence clearly showed that less than eighty acres of summer-fallow had been left upon the place, and that the provisions of the contract had not been fulfilled. It is our view that since the plaintiff did not prove that he had performed any work for which he was entitled to compensation, the motion for nonsuit should have been sustained." In view of the judge's finding and the record before us which bears it out, we cannot agree with this contention. The finding of the court was as follows: "That the plaintiff did during the year 1937 summer-fallow 74.5 acres of land included in the contract involved herein; and the summer-fallowing of said 74.5 acres was a substantial compliance with the terms of said contract in respect to summer-fallowing said land and that plaintiff's failure to summer-fallow 80 acres thereof during said year was not intentional nor an attempt to evade the provisions of said contract but was due to the fact that there was not sufficient tillable land for summer-fallowing during the year 1937 [because of a road crossing the land and other land not tillable] to enable the plaintiff to summer-fallow 80 acres of land during said year." The law never requires impossibilities. (Sec. 8760, Rev. Codes; compare, also, *Waite* v. *Shoemaker & Co.*, 50 Mont. 264, 146 Pac. 736.)

We do not deem it necessary to a disposition of this case to discuss whether the agreement in question was a lease, a cropper's agreement or otherwise. Under any name chosen for the agreement by counsel for the parties, or concept of law that would relegate it to one class of agreement or another, we feel that under the circumstances of the case, the result would have had to be the same.

With regard to the assignment that the court erred in refusing to grant the defendant's motion and demand for change of place of trial, it would appear to us that counsel for both sides might have saved themselves unnecessary labors in their briefs. Suffice it to say on the question that defendant, having appeared in court and proceeded to trial, waived his right

484

to raise the question on appeal from a judgment with which he was dissatisfied. (*Great Northern Ry. Co.* v. *Hatch,* 98 Mont. 269, 38 Pac. (2d) 976.)

In view of the foregoing disposition of the cause and the absence of reversible error in the other assignments of error, considered but not discussed here, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ERICKSON and ARNOLD concur.

Rehearing denied July 2, 1940.