R. E. DAVIS AND LOLA HUTCHINSON, D/B/A TABLE MOUNTAIN FARMS, PLAINTIFFS AND APPELLANTS, v. DONALD E. BURTON AND JAMES SCOLLARD, DEFENDANTS AND RESPONDENTS.

No. 9278.
Submitted July 13, 1954. Decided November 23, 1954.
Rehearing Denied January 11, 1955.
278 Pac. (2d) 213.

Mr. Ralph J. Anderson, Helena, Messrs, Berg & Pfohl, Livingston, for appellants.

Messrs. Bolinger & Horkan, Mr. H. A. Bolinger, Jr., Mr. George W. Horkan, Bozeman, for respondents.

Mr. Anderson, Mr. Ben E. Berg, Jr. and Mr. Bolinger argued orally.

MR. JUSTICE FREEBOURN:

This is an action brought by R. E. Davis and Lola Hutchin-

son, plaintiffs and appellants, against Donald E. Burton and James Scollard, Jr., defendants and respondents, to cancel and terminate a lease covering certain farm and ranch land, in Gallatin County, Montana for failure and neglect on the part of such defendants and respondents to perform and fulfill certain terms and conditions of such lease. From a judgment in favor of defendants, the plaintiffs appealed.

The lease was dated May 31, 1949, and was "for a period of three crop years, commencing with the date hereof and ending January 1, 1952," and covers "1600 acres, more or less, of farm lands, situate in Sections Thirty-five (35) and Thirty-six (36), Township One (1), North of Range One (1) East; Sections One (1), Two (2) and Thirteen (13), Township One (1) South of Range One (1) East; and Sections Eighteen (18) and Nineteen (19), Township One (1) South of Range Two (2) East, M. P. M., and all hay lands owned by either of first parties, [plaintiffs and appellants] situate on the Willow Creek bench south of Willow Creek, Montana, upon which sufficient hay is grown to make cutting the same profitable as hereinafter provided."

There is no dispute as to the terms of the lease, which the complaint alleges to have been violated. The defendants admit that such lease as set out in the complaint and marked exhibit "A" is a correct copy of said lease. The lease provides that the defendants "will seed and cultivate such portions of said leased premises at the times and in the manner as advised by the first parties."

The complaint alleges the terms of the lease were violated by the defendants in four ways, that is "in the following particulars, to-wit:"

(1) "That in the fall of 1949 the plaintiffs instructed the defendants to seed to winter wheat all of the plaintiffs' lands which had been summer fallowed during the summer of 1949 together with sufficient acreage in lands owned by the State of Montana and leased to the plaintiffs to equal a total acreage of 900 acres seeded to winter wheat; that at the time that the plaintiffs so instructed the defendants there was approximately 721.84

acres of the plaintiffs' lands which had been summer fallowed during the summer of 1949 and approximately 259.05 acres of lands owned by the State of Montana and leased to the plaintiffs which had been so summer fallowed; but that the said defendants failed and neglected to comply with said instructions and seeded to wheat only 444.65 acres of lands owned by the plaintiffs and approximately 259.05 acres of lands owned by the State of Montana and leased to the plaintiffs.''

(2) That ''the plaintiffs on April 15, 1950, delivered to the defendants written instructions * * * whereby the plaintiffs directed the said defendants not to plow certain lands located and being in section two (2), township one (1) south, range one (1) east, M. P. M., but that the said defendants subsequent to receiving said written instructions [exhibit ''C''], so made and delivered to them by the plaintiffs, contrary thereto and in total disregard thereof, plowed approximately 23.81 acres of said lands in said section two (2) which said lands so plowed by the defendants had been seeded prior thereto by the plaintiffs with crested wheat grass for the purpose of restoring them to pasture and grazing lands.''

(3) That ''the plaintiffs on April 15, 1950, delivered to the defendants written instructions * * * whereby the plaintiffs directed the said defendants not to plow certain lands located and being in section thirty-six (36), township one (1) north, range one (1) east, M. P. M., but that the said defendants subsequent to receiving each of said written instructions [exhibits ''C'' and ''D''] * * * contrary thereto and in total disregard thereof plowed approximately 37.12 acres of said lands in said section thirty-six (36) which said lands so plowed by the defendants had been seeded prior thereto by the plaintiffs with crested wheat grass for the purpose of restoring them to pasture and grazing lands.''

(4) That ''plaintiffs on April 15, 1950, delivered to the defendants written instructions [exhibit ''C''] * * * whereby the plaintiffs directed the said defendants not to plow certain lands located and being in section eighteen (18) township one (1)

south, range two (2) east, M. P. M., but that the said defendants subsequent to receiving said written instructions so made and delivered to them by the plaintiffs, contrary thereto and in total disregard thereof, plowed approximately 87.8 acres of land in said section eighteen (18) which said lands so plowed by the defendants consisted in part of lands in native sod grasses and in part in lands which had been seeded prior thereto by the plaintiffs with crested wheat grass for the purpose of restoring them to pasture and grazing lands.''

The complaint charges further violations of the lease, in addition to the four specifically pleaded, ''in the particulars set forth and enumerated in the notice to quit, exhibit 'B' '' which notice to quit is attached to and made a part of the complaint by reference. The answer denies such violations.

Instructions from plaintiffs took the form of a letter [exhibit ''C''] dated April 15, 1950, which reads as follows:

*Registered*

''Burton & Scollard

''Willow Creek, Montana

''Gentlemen:

''I notice that you have plowed around a patch of stubble in a draw in section 2 T1SR1E which I had seeded to winter wheat last year. Both of the draws in section 2 T1SR1E were seeded to crested wheat grass with the winter wheat, and we do not want them plowed.

''I also notice some other grass plowed up there which was not on the land which you are farming. This wanton destruction of grass is trespassing, and in the end we will ask you to relevel and seed every bit of it.

''I do not want you to do any further farming or plowing in sections 36 T1NR1E or section 18 T1SR2E. Your sublease on these two sections of land covers only two specific fields in section 18 T1SR2E.

''I want you to summer fallow the balance of the strips in section 19 T1SR2E and section 13 T1SR1E first. Then summer fallow the strips located in section 1 and 2 T1SR1E plowing the

strips in section 35 T1NR1E last. The reason for this is that the strips in this section were seeded to sweet clover and by that time there will perhaps be an opportunity to turn under some green manure on these strips.

"Regarding the additional land which will be required to make the 800 acres of fallow, we will designate these lands for your information as soon as it is apparent that you will be able to handle land in addition to what is outlined above.

"We want all land plowed, and to be harrowed within three days after it is plowed. We also want all summer fallowing and plowing done by the 10th day of June.

"Yours truly,

"Table Mountain Farms Co.

"R. E. Davis

"red :gd
"cc/   James Scollard
      Donald Burton"

Further instructions were contained in a letter (exhibit "D") dated May 22, 1950, which reads as follows:

"Donald Burton & James Scollard

"Willow Creek, Montana

"Gentlemen:

"I noticed the other day that you had plowed up the grass which was seeded in a draw in section 2 1S1E regardless of our specific instructions not to disturb this land, and you also threatened that you intended to plow the strips in section 36 1N1E which strips of land covered with stubble are also seeded to crested wheat grass and clover, and there is a good stand of grass on both these strips and the lands mentioned in section 2 1S1E. You had specific written notice not to plow these lands, and this is a further notice to the same effect.

"We intend to ask the court to allow us actual damages for

these trespasses and also actual and punitive damages for your entire disregard of our instructions and property rights.

"Yours truly,

"Table Mountain Farms Co.

"R. E. Davis

"red :jd"

Defendants in their answer admit (2) that on April 15, 1950, "the plaintiffs delivered to the defendants written instructions, a copy of which are attached to plaintiffs' complaint marked Exhibit 'C' '' which is hereinbefore set out, "wherein and whereby the plaintiff's directed the defendants not to plow certain lands located in Section (2), Township (1) South, Range One (1) East, M. P. M.; admit that the defendants plowed approximately 23.81 acres of said lands in said Section Two (2) and in this connection allege that defendants had plowed part of said lands prior to receiving said written instructions and that defendants plowed the remainder of said acreage after receiving said written instructions, and in this connection defendants further allege that said lands in said Section Two (2) so plowed by the defendants were seeded to crop on the 31st day of May, 1949, at the time of the execution of said lease Exhibit 'A' and that the plaintiffs in said lease Exhibit 'A' agreed as follows, to-wit:

" 'It is further understood and agreed that second parties [defendants] shall have the right to summer fallow during the crop year 1950 all crop lands now seeded to crop, and in addition thereto shall have a right to plow up and summer fallow sufficient of said leased lands to total 800 acres of land to be summer fallowed during the crop year 1950 in preparation for a crop for seeding during that fall or during the following crop year.' "And in this connection defendants further allege that immediately after receiving said written instructions from the plaintiff, the defendants contacted the plaintiff, R. E. Davis, and offered to cease plowing said lands, which defendants had a right to plow under and by virtue of the terms of said lease, if the plaintiffs

would designate other similar leased lands for plowing in lieu thereof in order to enable defendants to summer fallow sufficient of said leased acreage to equal 800 acres, but the plaintiffs refused to designate any other of said leased lands for plowing in lieu thereof, similar to said leased lands in said Section Two (2), and plaintiffs refused to designate sufficient of said leased lands suitable for plowing to total 800 acres of land to be summer fallowed during the crop year 1950;

"Admit [3] that on or about the 15th day of April, 1950, and also on or about the 22nd day of May, 1950, the plaintiffs delivered to the defendants written instructions, copies of which said written instructions are attached to plaintiffs' complaint marked Exhibits 'C' and 'D', wherein and whereby the plaintiffs directed the defendants not to plow certain lands located in Section Thirty-Six (36), Township One (1) North, Range One (1) East, M. P. M.; admit that, subsequent to receiving said written instructions, defendants plowed approximately 37.12 acres of said lands in said Section Thirty-Six (36) and in this connection allege that said lands in said Section Thirty-Six (36) so plowed by the defendants were seeded to crop on the 31st day of May, 1949, at the time of the execution of said lease, Exhibit 'A', and that the plaintiffs in said lease, 'Exhibit A', agreed as follows, to-wit:

" 'It is further understood and agreed that second parties [defendants] shall have a right to summer fallow during the crop year 1950 all crop lands now seeded to crop, and in addition thereto, shall have a right to plow up and summer fallow sufficient of said leased lands to total 800 acres of land to be summer fallowed during the crop year 1950 in preparation for a crop for seeding during that fall or during the following crop year.'

"And in this connection, defendants further allege that, immediately after receiving said written instruction, dated the 15th day of April, 1950, the defendants contacted the plaintiff, R. E. Davis, and offered not to plow said lands in said Section Thirty-Six (36) which defendants had a right to plow under and by virtue of the terms of said lease, if the plaintiffs would designate

other similar leased lands for plowing in lieu thereof in order to enable defendants to summer fallow sufficient of said leased acreage to equal 800 acres, but the plaintiffs refused to designate any other of said leased lands for plowing in lieu thereof, similar to said lands in said Section Thirty-Six (36), and plaintiffs refused to designate sufficient of said leased lands suitable for plowing to total 800 acres of land to be summer fallowed during the crop year 1950; * * *.

"Admit [4] that on or about the 15th day of April, 1950, the plaintiffs delivered to the defendants written instructions, a copy of which instructions are attached to plaintiffs' complaint marked Exhibit 'C', wherein and whereby plaintiffs directed the defendants not to plow certain lands located in Section Eighteen (18), Township One (1) South, Range Two (2) East, M. P. M.; admit that in the spring of 1950 the defendants plowed approximately 87.8 acres of land in said Section Eighteen (18), and in this connection allege that in the year 1949 the plaintiffs directed the defendants to plow said 87.8 acres of land so plowed by the defendants and in addition thereto other lands in said Section Eighteen (18), and at said time directed the defendants that if the defendants were unable to plow all of said designated lands in said Section Eighteen (18), in the year 1949, to plow the balance of said lands in said Section Eighteen (18), so designated in the spring of 1950, * * * and in this connection defendants further allege that prior to plowing said 87.8 acres of land in Section Eighteen (18) the defendants contacted the plaintiff, R. E. Davis, and requested the plaintiffs designate lands for plowing in lieu thereof in order that defendants could plow sufficient of said leased lands to have their acreage of summer fallow in the year 1950 which defendants were entitled to, but the plaintiffs refused to designate other leased lands siutable for plowing in lieu thereof, and plaintiffs refused to designate sufficient of said leased lands for plowing so that defendants could have their acreage of summer fallow in the year 1950 that defendants were entitled to."

In their further answer and affirmative defense the defend-

ants set forth a letter dated September 21, 1950, from the plaintiffs to defendants with reference to "the wheat allotment acreage for this ranch for 1951." Such letter in part said: "He [McCloud of the PMA] says that it will be over 626 acres and under 700 acres. As I told you last night, we have 228 acres of wheat seeded on the land which we have fallowed. Mr. Scollard indicated that you intended to proceed seeding winter wheat regardless of the allotted acreage, * * * However, we do not want the responsibility for exceeding the allotted acreage * * * and if you gentlemen want to stay within the allotted acreage allowed for this ranch, * * * whatever it may be, * * * [you will] still be in compliance. * * *"

Other matter alleged in such further defense tended to show that defendants were guilty of no violation of the lease.

The answer also set up a counterclain for $1,207.60, and a demurrer thereto was sustained. Whereupon, a reply was filed which denied all of the material allegations of the answer.

By its judgment, the cause being tried to the district court sitting without a jury, the district court "ordered, adjudged and decreed that the plaintiffs take nothing by this action and that the plaintiffs' complaint be dismissed on the merits; and that each party pay their own costs incurred herein."

The district court made seventy-five findings of fact, which take up twenty pages of the transcript, followed by six conclusions of law, which cover one page of the transcript.

Plaintiffs made fifty exceptions to the findings of fact, and excepted to the conclusions of law and to the court's refusal to make the conclusions of law requested by plaintiffs.

As to the alleged violation of the lease (2) the district court found "that pursuant to the terms and conditions of said farm lease, defendants had the right to plow and summer fallow the 23.81 acres of the lands in section two (2)."

As to the alleged violation of the lease (3) the court found: "That the defendants had the right under the terms of said lease to plow and summer fallow on said 37.12 acres of said leased land in said section thirty-six (36)."

As to the alleged violation of lease (4) the court found: "That the defendants, before they plowed said 87.8 acres of land in said section eighteen (18), contacted one of the plaintiffs, R. E. Davis, and requested that he designate lands for plowing, in place of said lands, in order that they could plow sufficient of said leased lands to have their acreage of summer fallow in the year 1950; that the plaintiffs refused to designate other leased lands, suitable for plowing, and refused to designate sufficient of said leased lands for plowing, in order that the defendants could plow the acreage of summer fallow in the year 1950."

We think after reading the transcript of the evidence and the lease, that the trial judge was well within his right and discretion, in holding that there had been no violations of the lease which justified its cancellation.

The burden was on the plaintiffs to prove, by a preponderance of the evidence, that defendants had violated the lease as charged in the complaint. R. C. M. 1947, sec. 93-2001-1, subd. 5.

In deciding the facts of the case the trial judge could accept "the direct evidence of one witness who is entitled to full credit" to prove any fact. R. C. M. 1947, sec. 93-401-1. And the trial judge who saw and heard the witnesses was not bound to decide the facts in conformity with the declarations of any number of witnesses, who did not produce conviction in his mind, against a less number, or against a presumption or other evidence satisfying his mind. R. C. M. 1947, sec. 93-2001-1 subd. 2.

In construing the lease and in determining if the same had been violated, as alleged, the trial judge, as we are, was cognizant of the law that, "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." R. C. M. 1947, sec. 13-707. See also Letz v. Lampen, 110 Mont. 477, 104 Pac. (2d) 4.

The law never requires impossibilities. R. C. M. 1947, sec. 49-123. It neither does nor requires idle acts, R. C. M. 1947, sec. 49-124, and it disregards trifles. R. C. M. 1947, sec. 49-125.

The trial court had in mind also, as have we here, that the law

■ does not favor forfeitures. State ex rel. Green v. Bird, 62 Mont. 408, 205 Pac. 241; State ex rel. Federal Land Bank v. Hays, 86 Mont. 58, 282 Pac. 32.

And even though the district court had decided against defendants, the law would give relief against such forfeiture, where hardship prevailed, since R. C. M. 1947, sec. 93-9720, provides in part that, ''The court may relieve a tenant against a forfeiture of a lease, and restore him to his former estate, in case of hardship * * *.''

In Letz v. Lampen, supra, 110 Mont. 477, 104 Pac. (2d) 4, 6, where a farm lease required 80 acres to be summer-fallowed, but the tenant summer-fallowed 74.5 acres, this court said: ''The finding of the court was as follows: 'That the plaintiff did during the year 1937 summer-fallow 74.5 acres of land included in the contract involved herein; and the summer-fallowing of said 74.5 acres was a substantial compliance with the terms of said contract in respect to summer-fallowing said land and that plaintiff's failure to summer-fallow 80 acres thereof during said year was not intentional nor an attempt to evade the provisions of said contract but was due to the fact that there was not sufficient tillable land for summer-fallowing during the year 1937 [because of a road crossing the land and other land not tillable] to enable the plaintiff to summer-fallow 80 acres of land during said year.' The law never requires impossibilities. Sec. 8760, Rev. Codes [1935, R. C. M. 1947, sec. 49-123] * * *.''

Appellants have pointed out some errors but none of these justify a reversal of the district court's judgment.

For the reasons stated the judgment of the district court is affirmed.

MR. CHIEF JUSTICE ADAIR and MR. JUSTICES BOTTOMLY, ANGSTMAN, and ANDERSON, concur.