No. 13118

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

———————

PERL SMITH, S. CHARLENE SMITH, and
EVERETT SATTERFIELD,

> Plaintiffs and Respondents,

-vs-

WILBUR J. ZEPP, WESLEY FARNER, C. E.
KNOWLES, and WOLVERINE MINING, INC.,
a Montana corporation,

> Defendants and Appellants.

———————

Appeal from:  District Court of the Third Judicial District,
Honorable Robert Boyd, Judge presiding.

Counsel of Record:

For Appellant:

Crowley, Haughey, Hanson and Toole, Billings, Montana
Stephen Foster argued, Billings, Montana
Boone, Karlberg and Haddon, Missoula, Montana
Sam E. Haddon argued, Missoula, Montana

For Respondents:

William R. Taylor , Deer Lodge, Montana
Radonich, Brolin and Reardon, Anaconda, Montana
John N. Radonich argued, Anaconda, Montana

———————

Submitted:  April 20, 1977

Decided:  AUG 2 1977

Filed:  AUG 2 1977

Thomas J. Kearney
_____
                  Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal by defendants from a district court judgment granting forfeiture of a contract for purchase of mining property by defendants and cancellation of a deed to a number of patented and unpatented mining claims.

In 1964, plaintiff Perl Smith purchased numerous patented and unpatented mining claims in Granite and Powell Counties known as the "Master Mine". Plaintiff thereafter obtained a personal bank loan and mortgaged the Master Mine property as security. When plaintiff failed to repay the loan, the bank obtained a judgment of foreclosure. The property was sold at a foreclosure sale on May 28, 1971, after which plaintiff's sole interest in the property was a year's statutory right of redemption under section 93-5835, R.C.M. 1947.

In late April, 1972, plaintiff met with defendants Zepp and Farner and discussed the sale of the Master Mine. On May 15, 1972, the parties entered into a contract whereby plaintiff agreed to sell, and defendants agreed to purchase, the Master Mine properties. As consideration for plaintiff's granting of his ownership rights in the property to defendants, defendants agreed to pay approximately $69,000 for the redemption of the first mortgage on the Master Mine property, and to pay $31,455 to various creditors of plaintiff. In addition, defendants agreed to pay plaintiff Perl Smith a monthly consultation fee of fifteen percent (15%) of the net operating profit of the Master Mine. The parties contracted that defendants would pay the 15% consultation fee to plaintiff Perl Smith or to his wife, plaintiff Charlene Smith, during their lifetimes; if both plaintiffs predeceased their son, defendants agreed to pay the son a commission of 7-1/2% of the net profits.

To insure that the income from the mine, and consequently,

the consultation fee or commission, were maximized, defendants agreed to produce an average of 300 yards of material each working day. The material would then be taken to the mine's washing plant where the gravel would be washed from the gold. There was not sufficient machinery at the gold mine to excavate 300 yards of material per day, but defendants agreed to purchase the larger Caterpillar, dragline with three yard bucket, and dump truck necessary to achieve a 300 yard per day production level.

The parties provided in the contract that in lieu of the consultation fees or commissions to be paid from the net mining profits, they might at a later date negotiate a fixed monthly payment. In case of any dispute between the parties as to the provisions of the contract, plaintiff Perl Smith and defendants agreed to submit the controversy to arbitration.

The contract also contained a provision which provided for a reversion of the property to the seller if defendants defaulted in their "payment of said property", and failed to cure their default within thirty days from receiving the seller's notice of default.

After plaintiff and defendants signed the contract, plaintiff fully performed his contract obligations. Plaintiff gave to defendants a quitclaim deed for all his interests in the Master Mine property and the buildings thereon. The buildings consisted of a main building with dining room, kitchen, bedrooms, showers, five furnished cottages, an assay building, and several other shops, light plants, storage and machinery repair buildings. The land consisted of approximately 360 acres of patented and 1,680 acres of unpatented mining claims. According to a local appraiser, the mining land was also valuable for recreation, timber and livestock grazing. The appraiser set the value of the land on February 12, 1968, at approximately $148,000, excluding mineral rights. According

to the report of a geophysicist who took random samples of the earth at the mine site, the property contained an estimated $615 million worth of gold and other noble metals.

Defendants paid the approximately $69,000 necessary to redeem the property from the mortgage foreclosure and paid the approximately $31,455 of plaintiff Perl Smith's debts, as they had agreed to do in the contract. Defendants also successfully prepared the property for mining, by clearing the mine road of snow, repairing damaged equipment, and building dams and settling ponds so as to comply with state and federal environmental regulations. Defendants thereafter, however, failed to meet the contract condition that required them to produce 300 yards of material each day. It was defendants' failure to satisfy this contractual provision which gave rise to plaintiff's successful lawsuit in district court, and defendants' appeal to this Court.

At the time that defendants commenced mining operations on July 16, 1972, they had not acquired the equipment necessary to remove 300 yards of material each day. Rather than using the three yard or bigger dragline that defendants had agreed to obtain, defendants provided a 3/4 yard dragline for excavation of gravel. The gravel was then hauled from the excavation pit to the washing plant in a truck which held five yards of material. Defendants hauled six to eight truckloads of material per day, so that total daily mining production averaged between thirty and forty yards.

In August, 1972, defendants twice negotiated without success for the purchase of used large draglines. Defendants also ran advertisements in various Montana newspapers and talked to heavy equipment dealers regarding the purchase of a Caterpillar. These efforts likewise were unsuccessful, and defendants continued to mine only thirty to forty yards per day until late August, 1972. On August 30, 1972, the man whom defendants had hired to operate

the Master Mine resigned from his job because he felt that the equipment at the mine was grossly inadequate. At that time, after little more than one month of mining thirty to forty yards of material daily, defendants ceased their mining operation.

For the entire month of mining, defendants recovered one ounce of gold. Because expenses of operation far exceeded mining income, there was no net profit, and plaintiff received nothing under the contract provision granting him a 15% commission fee from net mining profits.

On October 29, 1972, plaintiff Perl Smith and defendant C. E. Knowles attempted without success to negotiate a monthly payment to plaintiff to replace the contract's percentage of net profit commission clause. This matter was not submitted for arbitration under the contract's arbitration clause.

Plaintiff Perl Smith sent defendants notice of default in a letter dated March 15, 1973. Plaintiff stated in the letter that defendants were in breach of the contract for failure to mine 300 yards of material per working day. Plaintiff alleged that if 300 yards per day were mined, much gold and silver would be recovered and a net operating profit would be received from which plaintiff could receive his monthly percentage commission payment.

Defendants failed to cure the alleged default within the thirty days allowed in the contract. Plaintiffs on November 13, 1973, filed a complaint in district court, Granite County, alleging that defendants had breached their contract and asking that defendants forfeit all rights under the contract and all money paid pursuant to the contract, and that title to the Master Mines property be quieted in plaintiffs.

On December 9, 1974, the case was tried in district court before the Honorable Robert J. Boyd, sitting without a jury. The district judge found that the 300 yard per day production require-

ment was a basic term of the contract which required strict compliance by defendants. Defendants' failure to produce 300 yards of material per day was caused, the judge found, by their failure to obtain adequate equipment. The judge concluded that defendants' failure to produce more than fifty yards of material per day when the mine was worked, and their total failure to mine the claims in 1973 and 1974 was a substantial failure of performance. The judge concluded, as a matter of law, that the contract required that defendants' failure to mine 300 yards of material per day would result in cancellation of the contract, cancellation of the deed transferring the property from Perl Smith to defendants, and reversion of the title to the mining claims to plaintiffs Perl Smith and Everett Satterfield.

Defendants assert that the district court erred in ordering a forfeiture of their rights under the contract, which resulted in the loss to defendants of both the mining property and $96,000 in contract payments. Defendants claim that the evidence failed to show that a significant breach of the agreement occurred. Defendants next assert that, even if they did significantly breach the contract, forfeiture was an improper remedy.

Defendants' claim that the evidence failed to support a finding that they significantly breached the contract is without merit. The evidence at trial clearly showed that defendants failed to meet the express contract requirement that they produce 300 yards of material per working day. Defendants do not assert that they performed their contractual duty; rather, they claim that their failure to perform was excused due to impossibility of performance and commercial frustration.

The general rule is that, where a party to a contract obligates himself to a legal and possible performance, he must perform in accordance with the contract terms. Brown v. First

-6-

Fed. Savings and Loan Assn., 154 Mont. 79, 460 P.2d 97. Defendants, however, would have had no duty to perform their contractual promise to produce 300 yards of material daily if, due to facts of which neither plaintiffs nor defendants had reason to know, the promise was impossible of performance at the time the contract was made. 2 Rest. Contracts, section 456. Impossibility encompasses "not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." 2 Rest. Contracts, section 454.

Defendants assert that it was a basic assumption of all the parties to the contract that the Master Mine contained substantial gold, and that when their aborted efforts to mine yielded only about one ounce of gold, their failure to produce 300 yards of material daily was excused. Defendants contend that even if they had produced the 300 yards per day, there would have been no profit from which plaintiffs could receive a commission, because there was no gold. Defendants therefore concluded that it was impossible to operate the mine at a profit. Defendants cite 2 Rest. Contracts, section 460, which says:

> "(1)Where the existence of a specific thing * * *
> is, either by the terms of a bargain or in the
> contemplation of both parties, necessary for the
> performance of a promise in the bargain, a duty
> to perform the promise
>         (a) never arises if at the time the
>         bargain is made the existence of the
>         thing * * * within the time for
>         seasonable performance is impossible
> * * *."

The flaw in defendants' argument, however, is that they never proved that the "specific thing", gold, did not exist in the Master Mine properties in sufficient quantities to make a placer mining operation profitable. Plaintiffs had no duty to prove that marketable quantities of gold did exist in the Master Mine. Rather, the burden of proving impossibility rested on the party asserting the defense. Hensler v. City of Los Angeles, 124 Cal.App.2d 71,

-7-

268 P.2d 12. Defendant Wilbur Zepp testified that only one ounce of gold was recovered. Yet defendants presented no expert testimony to establish that production of merely 30-40 yards of material per day for one month was conclusive evidence that substantial quantities of gold did not exist on the property. Defendants did not introduce any evidence of geologists' or geophysicists' reports as to the minerals contained in the land. Furthermore, a geophysicist's report prepared at the request of plaintiff Perl Smith prior to the sale of the property indicated that the Master Mine contained valuable gold and other noble metals.

Defendants, during the one month in which they operated the mine, were unable to achieve a 300 yard per day production because their mining equipment was insufficient. "The party pleading impossibility must demonstrate that it took virtually every action within its powers to perform its duties under the contract." Kama Rippa Music, Inc. v. Schekeryk, 510 F.2d 837. Defendants explained that they advertised in the state newspapers and contacted two private parties and one dealer concerning larger equipment, but failed to explain why other sources in nearby states were not contacted.

A final reason why the failure of defendants to satisfy the contract provision requiring 300 yards of production per day was not excused due to impossibility is that the possible absence of gold at the mine was a risk of the bargain. It is uncertain whether or not an appreciable amount of gold exists at the Master Mine. In a gold mining venture such as this one, however, where defendants failed to inspect the mine or geologically test the soil before purchase, the possibility existed that the rewards might range from lucrative to nonexistent. Defendants could have hired geologists to study the mineral content in the Master Mine prior to signing their contract with plaintiff rather than relying

-8-

solely on geological reports prepared several years previously for Perl Smith. This they failed to do. 2 Rest. Contracts, section 456, excuses a promisor from performing a contractual promise due to impossibility only when the promisor and promisee had no reason to know of the impossibility when they contracted. In this case, the possibility of an unprofitable mine should have been foreseen by defendants and specifically provided for in the contract.

It is possible that the Master Mine properties contain so trifling an amount of gold that further mining would be economically disastrous. If this is the case, defendants did not prove it at trial. If such is the case, however, defendants merely made a bad bargain by not providing for this very foreseeable contingency in the contract or by themselves inspecting and testing the mining property before the purchase. This Court may not rewrite the terms of the contract in this case. Rather, we follow the law as stated by this Court in Hein v. Fox, 126 Mont. 514, 520-521, 254 P.2d 1076:

> "Courts can give no solace where parties to a contract find themselves minus expected profit through failure to exercise care in drawing up such contract. What this court said in Hinerman v. Baldwin, 67 Mont. 417, 433, 215 Pac. 1103, 1108, well applies here, viz: '* * * The court has no right to make a contract for the parties different from that actually entered into by them. * * *
>
> "'* * *
>
> "'Whether the plaintiff made a good or a bad bargain is of no concern to the court. * * * Merely because the terms of the contract now appear unreasonable or burdensom affords no reason to permit him to avoid his contract. * * *
>
> "'* * * The duty of the court is to enforce contracts, not to make new ones for the parties, however unwise the terms may appear.'"

The doctrine of commercial frustration is also inapplicable to the facts of this case. To relieve a promisor from a duty to perform under this doctrine, the expected value of the performance must be destroyed by an unforeseeable, intervening event. Lloyd v.

-9-

Murphy, 25 Cal.2d 48, 153 P.2d 47. The possibility that there is negligible gold at the Master Mine was foreseeable at the time the parties contracted. Furthermore, no intervening event has reduced the quantity of gold at the mine. Defendants are not excused from breaching their contractual duty to mine 300 yards of material daily.

The remaining issue on appeal is the propriety of forfeiture as a remedy for defendants' breach. The district judge based his judgment that the defendants should forfeit their payments and rights under the contract on the contract provision which stated in pertinent part that "In case of default by purchaser in payment of said property, it shall immediately revert to the seller, Perl Smith, provided first seller gives purchaser thirty (30) days' written notice of any default and purchaser shall then have thirty (30) days from receipt of said notice to remedy said default * * *." Plaintiff Perl Smith did give defendants written notice of their default in failing to produce 300 yards of material per day. Defendants did fail to remedy the default within thirty days of receiving the notice. Defendants' default, however, was not of the type that would trigger the contract's forfeiture provision.

Montana law does not favor forfeitures. Table Mtn. Farms v. Burton, 128 Mont. 434, 278 P.2d 213; State ex rel. Green v. Bird, 62 Mont. 408, 205 P. 241. Section 58-212, R.C.M. 1947, provides:

> "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."

This Court has consistently given section 58-212 and its predecessor statutes an expansive interpretation, enforcing forfeiture provisions only in situations where "the strict letter of the contract requires it" and language of forfeiture is "plainly expressed". Finley v. School District No. 1, 51 Mont. 411, 416,

153 P. 1010 (1915); Lipsker v. Billings Boot Shop, 129 Mont. 420, 288 P.2d 660; Cedar Creek Oil & Gas Co. v. Archer, 112 Mont. 477, 117 P.2d 265. Interpreting the forfeiture clause against plaintiffs, the parties for whose benefit the provision was created, it can hardly be said that the contract requires forfeiture for failure to produce 300 yards of material each working day. The provision required reversion of the property to the seller "In case of default by purchaser in payment of said property * * *." Defendants made all the "payments for the property" that were required under the contract. These payments included furnishing the redemption price for the property, and paying various debts of Perl Smith. The production clause on which defendants defaulted, directly related to a consultation fee or commission to be paid from the net mining profits. The forfeiture clause, strictly interpreted, did not relate to this contract provision or to any provision other than the property payment clauses.

Section 58-212, R.C.M. 1947, is borrowed from Section 1442, Cal.Civ. Code. The California Court of Appeals refused to declare that mine buyers' contract rights and purchase moneys were forfeited in a case in which the buyers failed to perform a contract obligation to mine for a minimum amount of hours per month. The court stated that "if an agreement can be reasonably interpreted so as to avoid forfeiture, it is the duty of the court to avoid it." Nelson v. Schoettgen, 1 Cal.App.2d 418, 36 P.2d 665.

Plaintiffs claim that the clause is not a forfeiture clause, but is a reversion clause for which the rules regarding forfeitures are inapplicable. A forfeiture by any other name is still a forfeiture. There has been a forfeiture where parties such as defendants lose all the money they have paid on a contract, as well as all their rights and interests in the property.

Although plaintiffs and defendants have themselves provided

-11-

in their contract for all future contract disputes to be decided by arbitration, this Court cannot order that the question of damages be submitted to arbitration, pursuant to this contract clause. The parties may agree that this specific issue of the "value" of damages be submitted to binding arbitration, and then they will be bound by the arbitrators' decision. School District No. 1 v. Globe & Republic Ins. Co., 146 Mont. 208, 404 P.2d 889. The arbitration provision as written, however, was nearly identical to the arbitration clause which this Court held to be unenforceable in Green v. Wolff, 140 Mont. 413, 372 P.2d 427. Any contract provision which states that all future contract disputes shall be submitted to arbitration is void under section 13-806, R.C.M. 1947, which invalidates any contract provision restricting access to the courts. Although arbitration may be the most speedy and economical means available to parties for a binding resolution of their disputes, this Court cannot enforce as broadly worded an arbitration clause as exists in this contract until the legislature amends or repeals section 13-806.

The legislature intended, in section 17-301, R.C.M. 1947, to insure that one who is injured by another's wrongful breach of contract has a right to recover such damages as will make him whole again. Bos v. Dolajak, 167 Mont. 1, 534 P.2d 1258. The contract in this case provided that plaintiff Perl Smith, his wife, or son would receive consultation fees or commissions for a limited period of time, measured by how long they should live. Plaintiffs can never recover those lost years of fees or commissions from net profits except by way of damages. The proper measure of damages so as to make the seller in this case "whole again", therefore, is the amount which the district judge finds that plaintiff Perl Smith would have received in consultation fee royalties from net mining profits if defendants had produced 300 yards of material

-12-

each working day since the property was made ready to be mined in 1972, plus interest from the date the royalties would have accrued. See Freeport Sulpher Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039.

Plaintiffs have the burden of proving, by competent evidence, the amount of damages which they suffered due to defendants failure to produce 300 yards of material during each working day. Rigney v. Swingley, 112 Mont. 104, 113 P.2d 344. Plaintiffs will not be denied recovery merely because the damages in this case are difficult to ascertain, as long as they prove damages with reasonable certainty. In Brown v. Homestake Exploration Co., 98 Mont. 305, 337, 39 P.2d 168, this Court stated plaintiff must provide the district judge with:

> "A reasonable basis for computation and the best evidence obtainable under the circumstances and which will enable [the judge] to arrive at a reasonably close estimate of the loss * * *."
> (Bracketed material substituted.)

Such evidence may include, but is not limited to, the testimony of geologists and geophysicists who test the mine's soil, the past history of the mine, the cost of mining 300 cubic yards of gravel per day and the value of gold and other noble metals in the soil during the time that defendants failed to mine.

Although plaintiffs in their complaint asked solely for forfeiture as a remedy for defendants' contract breach, the trial judge must grant such other relief as is proper under the proven facts of the case. Rule 54(c), M.R.Civ.P., which is identical with Rule 54(c), Fed.R.Civ.P., provides:

> "* * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

In Garland v. Garland, 165 F.2d 131, the plaintiff, in her complaint, asked solely for recission and cancellation of a contract.

The court held that Rule 54(c), Fed.R.Civ.P., authorized the trial court to grant the plaintiff damages, as well as specific performance, even though the plaintiff did not request that relief in her pleadings. In the case at bar, plaintiffs have proven that defendants breached their contract and have made a case for possible damages, though this was not the relief they requested. Although they are not entitled to forfeiture, under Rule 54(c), M.R.Civ.P., the trial judge has the duty to give plaintiffs a hearing on damages, the remedy to which they are entitled under the facts proven at trial. See also: Columbia Nastri & Carta Carbone v. Columbia Mfg. Co., 367 F.2d 308; Hutches v. Renfroe, 200 F.2d 337.

The district judge's findings that defendants breached their contract is affirmed. The judge's ruling that defendants forfeited all rights and money paid under the contract is reversed. The cause is remanded, with instructions to proceed in accordance with this opinion.

_____
Chief Justice

We Concur:

_____

_____

_____

_____
Justices

-14-