No. 83-513

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

FLOYD M. SACK, d/b/a EMPIRE
DEVELOPMENT COMPANY,

Plaintiff and Respondent,

-vs-

A. V. DESIGN, INC., a corp.,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hendrickson & Everson; Jim Ragain, Billings, Montana
Porterfield & Wheatley; Wendell B. Porterfield, Jr.,
Denver, Colorado

For Respondent:

James P. Murphy, Billings, Montana

---

Submitted on Briefs: April 12, 1984

Decided: July 3, 1984

Filed: JUL 3 - 1984

*Ethel M. Harrison*
—————————————————————————
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal concerns a construction contract dispute between the owner of a commercial office building erected in Billings, Montana, and the subcontractor corporation that furnished the heating, ventilating and air conditioning systems for the building. The matter was tried in the Thirteenth Judicial District, in and for the County of Yellowstone, before Judge Robert H. Wilson, presiding without a jury. The District Court found appellant A.V. Design liable for breach of contract and awarded respondent Floyd M. Sack damages in the amount of $11,424.61. From the findings of fact and conclusions of law and judgment, A.V. Design appeals.

Floyd M. Sack, d/b/a Empire Development Co. is the owner of several commercial buildings in Colorado, Utah Virginia and Montana. The subject matter of this action is a building owned by Sack in Billings. Acting as the general contractor, Sack requested A.V. Design to submit a bid on the heating, ventilating and air conditioning systems for this building. A.V. Design is a Denver based corporation with whom Sack had prior business dealings. Following preliminary discussions between the parties, a written contract dated August 27, 1980, was entered into between A.V. Design as subcontractor and Empire Development Company as the general contractor. The contract provided that the work was to be performed "continuously and uninterruptedly" until the project was completed.

A.V. Design's bid was based on a system designed by it and submitted to Sack, called a variable air volume system

(V.A.V.). This type of system was new to Sack and had not been utilized by him in any other buildings he owned. After the system was completed and the building occupied, Sack began receiving complaints from the tenants that the building was alternately too hot or too cold. Sack made several trips from his home in Denver to Billings to examine the system and the building, after which he determined that the system was not properly "balanced." Sack contacted A.V. Design and attempted to persuade them to complete the job by balancing the system. Despite Sack's efforts A.V. Design did not balance the system and eventually Sack was forced to have the system balanced by a Billings professional engineer.

In the course of his repairs, the engineer found numerous problems; the return air system was improperly installed, thermostats and V.A.V. boxes were improperly installed, air diffusers were either not installed or improperly installed, V.A.V. coils were sticking open or closed, the hot water circulating pump was improperly installed, outside air sensors for the hot water pumps were not hooked up and static pressure sensors were installed in the wrong places. The major problem was that because of the defective equipment and improper installation, the system was forcing both hot and cold air into the building at the same time. As a result the temperature in the building fluctuated sometimes over 20° during a work day, and the gas bills (which were paid by Sack, not the tenants) were astronomical. The system was finally repaired and balanced after Sack made several trips from Denver to oversee the work and contract with qualified repairmen.

In July 1982, Sack brought suit against A.V. Design to recover damages for breach of the contract. The complaint sought damages based upon the failure of A.V. Design to complete the installation of the system and adequately balance the system after repeated demands. This in turn was based on the warranty language contained in the subcontract, which also allowed Sack to repair or replace any defects covered by the warranty at A.V. Design's expense. Specifically, Sack claimed damages for the amounts paid other contractors or suppliers to complete the installation and adjustment of the system, the amount paid for excess natural gas consumed by the system and travel expenses incurred in shuttling between Denver and Billings.

Following a trial before the District Court sitting without a jury, findings of fact and conclusions of law were entered. A.V. Design was found to be in breach of contract and Sack was awarded $15,146.39 as damages for the above mentioned claims. This amount was set off by a $3,722.78 retainage held by Sack, and judgment for $11,424.61 was entered. A.V. Design filed a motion for new trial, which was denied. This appeal follows.

Appellant raises three issues for our consideration:

(1) Are the findings of fact and conclusions of law supported by the facts of this case?

(2) Did the trial court err in awarding damages for natural gas consumption?

(3) Did the trial court err in awarding Sack his travel expenses?

In reviewing the findings of fact made by a lower court, we may not substitute our judgment in place of that

of the trier of facts. This Court's function rather, is to determine whether there is substantial credible evidence to support the findings of fact. Cameron v. Cameron (1978), 179 Mont. 219, 587 P.2d 939. In making that determination, the evidence is viewed in a light most favorable to the prevailing party. Cameron, supra.

The District Court found that A.V. Design had breached the contract by failing to make the necessary final adjustments to complete the system. The court found this in breach of the warranty provisions and also that A.V. Design had simply not completed the contract. Despite appellant's contentions, these conclusions are supported by the evidence brought forth at trial.

Sack presented the testimony of a professional engineer, whose specialty was testing and balancing heating, air conditioning and ventilating systems such as the one installed here. The engineer enumerated several defects in the system as installed and several items missing from the system which made it incomplete. He testified that these deficiencies in the system caused the problems of which the tenants complained. Appellant presented some conflicting evidence, contending that the work done by Sack's repairmen was "tenant finish" work not required by the contract. However this "tenant finish" work alluded to by A.V. Design did not cure the problems enumerated by the engineer. The changes suggested by the engineer cured defects in either the design or installation of the system; such as placement of thermostats and static pressure sensors, mechanical failure of equipment and missing parts. The fact that these changes were necessary to correct the problems with the

system was not rebutted by appellant's testimony. Also, there being a marked decrease in complaints after these adjustments were made lends credence to the engineer's testimony that the defects uncovered by him were the cause of the problem. There is clearly sufficient evidence to support the findings of the trial court.

The final two issues concern the award of damages made by the District Court. For a breach of contract, the amount of damages allowed "[I]s the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract." Section 27-1-311, MCA. "Where the contractor fails to keep his agreement, the measure of the employer's damages . . . is always the sum which will put him in as good a position as if the contract had been performed." Kirby v. Kenyon-Noble Lumber Co. (1976), 171 Mont. 329 at 332, 558 P.2d 452 at 454.

Appellant first contends that it was error to award Sack damages to compensate for the excess natural gas usage caused by the defects in the system. There was ample testimony to establish that during the five summer months when the system was improperly adjusted (May through September, 1981), the heating and cooling systems were operating at the same time, working against each other. This caused the energy bills for the building to skyrocket. Sack testified that the energy costs for the building were over twenty cents per square foot per annum, when they

should have been between five and six cents per square foot per annum. Based on these figures, the court apparently reasoned that the defects in the system were causing it to consume eighty percent more natural gas than it would have if it had been properly adjusted. Therefore it awarded Sack damages in the amount of $2,493.18, which represents eighty percent of the total natural gas bills for May through September of 1981.

Appellant contends that the District Court should not have awarded any amount for excess gas usage, and if it awarded any damages, the eighty percent figure was in error as too speculative. As noted above, there was sufficient evidence to establish that an award of damages for excess natural gas usage is proper. A plaintiff will not be denied recovery simply because it is difficult to ascertain the amount of his damages, as long as the amount can be proven with a reasonable degree of certainty. Smith v. Zepp (1977), 173 Mont. 358, 567 P.2d 923. As noted in Smith, the plaintiff must provide the trial judge with, "A reasonable basis for computation and the best evidence obtainable under the circumstances . . . which will enable the judge to arrive at a reasonably close estimate of the loss. . . " 173 Mont. at 370, 567 P.2d at 930, citing Brown v. Homestake Exploration Co. (1934), 98 Mont. 305 at 337, 39 P.2d 168 at 179.

Here, Sack presented the court with utility bills covering the period for which he was claiming damages, and bills covering the same months for the following year when the system was properly working. This clearly provided the judge with a reasonable basis for computation of his

damages. Appellant simply claims the award is speculative, and offers no alternative method for computing damages. Any award of damages is grounded to a certain degree upon speculation. Sikorski v. Olin (1977), 174 Mont. 107, 568 P.2d 571. However, the award of damages to Sack for excess natural gas usage is grounded upon the best available evidence and is a reasonably close estimate of the loss suffered. The award was not in error.

Finally, appellant contends that the District Court erred by awarding Sack damages for the travel expenses incurred when he traveled from his home in Denver to Billings to oversee the repairs. Upon review of the record it is impossible to determine how this damage figure was arrived at by the District Court. The figures submitted by Sack to support these damages do not total the amount granted by the court, and also it appears most of the expenses claimed were included in a settlement paid by appellant's insurance company. The cause must be remanded for redetermination of the findings of fact and conclusions of law, as they relate to the award of travel expenses.

Affirmed in part, remanded in part for redetermination of the findings of fact and conclusions of law as they relate to the award of travel expenses.

John Conway Harrison
Justice

We concur:

Frank J. Haswell
Chief Justice

_____
L. C. Gulbrandson

_____
Frank B. Morrison

_____
Justices