No. 80-229

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

JOHN MILLER,

Plaintiff and Respondent,

vs.

JOHN TITECA,

Defendant and Appellant.

Appeal from:  District Court of the Sixth Judicial District,
In and for the County of Sweet Grass.
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

J. Brian Tierney, Butte, Montana

For Respondent:

Paulson and Tulley, Big Timber, Montana

Submitted on briefs:  February 5, 1981

Decided: June 1, 1981

Filed: JUN 2 1981

Thomas J. Kearney
_____
                        Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff and respondent, John Miller, buyer, brought this action in order to recover damages caused by the seller's breach of a cattle-sales contract. A nonjury trial was held in the District Court of the Sixth Judicial District, Sweetgrass County, the Honorable Jack Shanstrom presiding. Seller and defendant, John Titeca, now appeals from the judgment entered in favor of the buyer in the amount of $6,492.50.

The seller presents nine separate issues for review:

1. Did the District Court err by not barring maintenance of the buyer's action by reason of the fictitious name statutes?

2. Did the District Court err by not ruling upon and granting the seller's motion for summary judgment for the reason that the contract dated July 20, 1978, was void as a matter of law?

3. Did the District Court err in not making findings and conclusions upon the issue of the buyer's reliance and right to rely upon the contract of July 20, 1978, as alleged in the complaint?

4. Were the findings and conclusions made by the District Court supported by the evidence as to the issues of mutuality of obligation and valid consideration relating to the contract of July 20, 1978?

5. Did the District Court err in the findings and conclusions relating to the issue of excuse of performance by the seller?

6. Did the District Court err in the findings and conclusions relating to the issue of impossibility of performance by the seller?

7. Did the District Court err by not entering findings

and conclusions relating to excuse of performance by reason of the actions and rejection of the buyer after the seller's final offers?

8. Did the trial court err in the findings and conclusions as to the measure of damages based upon the allegations of the complaint?

9. Did the trial court err in awarding attorney fees to the buyer?

We affirm the District Court on all issues except no. 9 as to attorney fees; we reverse on that issue.

The seller and buyer entered into a written contract on July 20, 1978, for the sale of 80 head of mixed calves. The sale price was 67 cents per pound for 45 choice steer calves and 60 cents per pound for 35 choice heifer calves, which prices were the then-prevailing market prices. The contract called for the seller to deliver the calves on or before the tenth to fifteenth of November 1978, with the understanding that the calves were to be weaned on hay and oats for at least 45 days prior to delivery.

The seller executed the contract by and for himself, even though title to the calves was held by his wife alone. The buyer executed the contract by and through his agent, who signed "J. Miller Livestock Co., by Earl Butler". The agent gave the seller a check for $2,000 as downpayment at the time of execution. There is conflicting testimony as to whether the agent was told at the time of execution that the seller would not cash the check and that the calves were in fact owned by the seller's wife. The agent was told that the calves were located at the seller's various properties in Park, Golden Valley and Wheatland counties.

Three weeks after execution, on August 14, 1978, the seller informed the agent that personal problems had arisen,

and the seller asked the agent to obtain replacement calves. The agent replied that he could acquire replacement calves.

Six weeks after telling the agent of his problems, on September 28, 1978, the seller phoned the buyer himself and informed the buyer that no delivery could be made until after January 1, 1979, and that the agent had indicated that replacement calves could be obtained. The buyer, in response, informed the seller that the calves had already been sold by the buyer to a feeder in Minnesota.

On October 16, 1978, the seller met the buyer's agent in Billings, and again advised him of the impossibility of delivery until after January 1. The seller asked the agent whether replacement calves had been obtained. The agent replied that he would acquire them that same day.

Replacement calves were acquired, so that buyer was able to fulfill his contract with the feeder in Minnesota.

The day after the meeting in Billings, on October 17, the buyer entered into another contract for the transfer of the calves which he was buying from the seller. That second contract was made with a Fred Schwartz, who the seller claims was a business partner of the buyer.

The buyer sent the seller a letter on October 29, warning the seller of the need to comply with the contract, and extending the date of delivery by one month, to December 15.

Heavy snow fell on November 8. The next day, November 9, the seller returned the uncashed $2,000 check to the agent, which check had been given as downpayment. In a letter accompanying the check, the seller stated that delivery was impossible, and requested more time.

On November 13, the buyer called the seller and demanded delivery by December 15. The seller replied that delivery

-4-

by that date would be impossible due to the bad weather. The seller informed the buyer that the calves were located at the seller's various properties, requiring a 160-mile round trip to feed them. The buyer stated that he would refuse to take delivery after January 1, because he wound up his business at the end of the year and because the calves would be so heavy by then as to be considered yearlings.

On November 17, the seller informed the buyer's attorney that delivery would be unlikely by December 15, due to the calves' poor condition and to the bad weather.

On November 18, the seller stated to the buyer's attorney by phone that no delivery could be made until after January 1, because of the period of time required for weaning and weight gain.

The buyer filed suit on December 8, praying for specific performance or for damages in the event the seller failed to deliver by December 15.

The seller hired persons to plow his ranch road, and after two days of plowing was able to truck out some calves. Eighteen of the calves were sold in an unweaned condition on December 15 in Billings. The remaining 72 calves were weaned and grain fed for 45 days, and were sold in Billings over four separate dates in January and February 1979, for prices of up to $1 per pound. All money was paid to the seller's wife, the owner of record.

The seller filed a motion to join an indispensable party and a motion to dismiss on January 18. The "indispensable party" was apparently the buyer's agent. Hearing on the motion was held on February 1. No ruling was made.

On February 9 the seller filed his answer, affirmatively alleging that the suit was barred because of the buyer's

failure to comply with the Montana fictitious name registration statutes.

On August 6, 1979, the seller moved for summary judgment, based upon alleged voidness of the contract due to the seller's not owning the calves. A hearing was held but no ruling was made.

The seller filed another motion for summary judgment on March 25, 1980, based upon an alleged failure of consideration. No hearing was ever held.

Nonjury trial was held on April 3 and 15, 1980. The District Court entered judgment for the buyer in the amount of $6,492.50, together with costs and attorney fees.

The seller appeals.

1. FICTITIOUS NAME

The appellant, seller, alleged, as an affirmative defense in his answer, that the buyer's action is barred for failure to register the fictitious name "J. Miller Livestock Co.", as required by former section 30-13-111, MCA, 1978, in effect at the time this contract was executed (July 20, 1978) but since repealed (Sec. 18, Ch. 260, Laws of Montana, 1979). The former statute was quite old, and had been construed and applied several times. Generally, this Court held that if a business name fairly disclosed the true names of all persons interested in the business, then no compliance with the statute was necessary; and, that the duty was on the defendant asserting the bar to affirmatively prove lack of compliance. Canonica v. St. George (1922), 64 Mont. 200, 205, 206, 208 P. 607, 608; Croft v. Bain (1914), 49 Mont. 484, 489, 143 P. 960, 962. The seller has plainly failed to carry his burden of proof. Although he refers to the agent and the eastern feeder as buyer's "partners" throughout the

pleadings, transcript and brief, the record contains no evidence to show that anyone besides John O. Miller has any interest in the business "J. Miller Livestock Co." It is not enough for the seller to merely claim that he is without knowledge or that he has raised questions about the status of the business. Croft v. Bain, supra. The business name here fairly discloses the name of the person interested in the business. Because the seller failed to prove his allegations, any errors by the trial court in failing to rule upon his motions were harmless, as the motions should have been denied.

2. WHETHER THE CONTRACT IS VOID

Theseller argues that the contract of July 20, 1978, is void due to the fact that he did not own the calves at the time of execution, claiming the contract is wholly impossible and unlawful as proscribed in section 28-2-603, MCA.

The mere fact that a party contracts to sell something he does not own does not raise the defense of impossibility. Barrett v. Ballard (1980), ___Mont.___, 622 P.2d 180, 184, 37 St.Rep. 2038, 2041. The burden of proving impossibility rests on the party asserting the defense; such party must demonstrate that he took virtually every action within his powers to perform his duties under the contract. Smith v. Zepp (1977), 173 Mont. 358, 365-366, 567 P.2d 923, 927. The seller offered no evidence as to why it was impossible for him to obtain his wife's consent to the sale or to buy her out. "The object of a contract must be lawful when the contract is made and possible . . . by the time the contract is to be performed." Section 28-2-602, MCA. The seller has failed to show that it was impossible for him to obtain the calves for delivery. The District Court's failure to rule upon the seller's motion for summary judgment on this ground is harmless because it should have been denied.

-7-

## 3. BUYER'S RIGHT TO RELY

The seller argues that the buyer's complaint sought damages due to the buyer's detrimental reliance upon the contract, in that the buyer had obligated himself to resell the calves to an eastern feeder, which obligation the buyer is now unable to fulfill and for which the buyer is liable. The seller argues that, based upon the buyer's own pleadings, the buyer cannot recover because he could not detrimentally rely on the contract; the seller had informed the buyer on several occasions that the seller would not be able to fulfill the contract. This argument is beside the point. Damages were ultimately determined on the simple basis of difference between market prices on the date of delivery and the date of execution, as provided by Montana's Uniform Commercial Code (section 30-2-713, MCA).

It is true that the District Court's method of resolving damages did not conform precisely with the buyer's complaint, but the court's action was proper. All pleadings shall be so construed as to do substantial justice. Rule 8(f), M.R.Civ.P. The courts should "look to the claim as a whole, to the subject with which it deals, to the reason and spirit of the allegations in ascertaining its real purpose. If such purpose can reasonably be said to be within the scope of the language used, that purpose should be honored." Hidden Hollow Ranch v. Collins (1965), 146 Mont. 321, 325, 326, 406 P.2d 365, 368. The purpose and spirit behind the buyer's complaint is to recover for breach of contract, and damages based upon the changes in market prices are within the scope of the complaint.

## 4: LACK OF CONSIDERATION AND LACK OF MUTUALITY OF OBLIGATION

The seller argues that valid consideration and mutuality of obligation are essential to a contract, that the District

Court's findings and conclusions fail to set forth these elements, that the buyer has suffered no legal detriment in the nature of consideration for the reason that his later contract for resale of the calves to an eastern feeder has not been enforced by the feeder. The seller fails to recognize that mutual promises are valid consideration. The buyer promised to pay the seller a certain amount in return for the seller's promise to deliver the calves on a certain date in a certain condition. The buyer delivered a $2,000 check as downpayment on his promise. Mutual promises alone are enough to constitute valid consideration. Section 28-2-801, MCA; see 17 C.J.S. Contracts, §§97, 98. In addition, the buyer gave the check as downpayment, notwithstanding the seller's later return of that check. These facts are undisputed, and constitute sufficient basis for the District Court's conclusions.

5:  EXCUSE OF PERFORMANCE

The seller argues that the evidence shows he intended to deliver the calves by the extended date of December 15, but was excused from performance because of the bad weather. The trial court, however, chose to believe that the seller did not so intend, which belief is supported by the facts set forth in the discussion of issue no. 6, below. The findings are not clearly erroneous, and will not be set aside. Rule 52(a), M.R.Civ.P.

6:  IMPOSSIBILITY OF PERFORMANCE

The seller asserts another defense of impossibility due to harsh weather conditions at the time set for delivery. The trial court apparently found the seller did not intend to deliver until after January 1 in any case. Such a finding is supported by the following facts: the seller had been telling the buyer since September 28 that no delivery could

-9-

be made until after January 1; the seller had been intimating an unwillingness or inability to comply with the contract since at least August 14; and, the seller, in order to wean the cows for the agreed 45-day period, would have had to start weaning by October 31 in order to deliver by December 15. October 31 was nine days before the snow. There is adequate evidence to support the District Court's conclusions.

7: EXCUSE OF PERFORMANCE BY REASON OF REJECTION

The seller argues that the buyer wrongfully rejected delivery after January 1 and such rejection made performance impossible due to the buyer's hindrance. The District Court found that the seller had never delivered any calves (finding no. 13), and concluded that the failure of the seller to make even partial performance amounted to a complete breach of the contract. The court's finding is supported by the evidence that the seller failed to tender delivery after January 1; that all he did was state on several occasions that he would be unable to deliver until after January 1; and that the buyer always demanded delivery by the agreed date. After January 1 the seller took the calves to Billings and sold them at an increased price without offering them to the buyer. The court's findings are not clearly erroneous.

8: DAMAGES

The seller argues that the buyer never purchased replacement calves in order to fulfill his contract for resale to the eastern feeder; as a consequence, the failure to mitigate damages must be taken into account. But damages were calculated on the basis of change in market price alone, pursuant to section 30-2-713, MCA. The buyer's capacity to fulfill his own contract for resale is not an issue here.

9: ATTORNEY FEES

-10-

The seller argues that the buyer is not entitled to attorney fees. The buyer admits that attorney fees can only be granted pursuant to express statutory or contractual provision, but argues that where a party acts in bad faith during litigation and discovery, attorney fees should be awarded to cover the other party's unnecessary expenses in dealing with the bad faith. The District Court did not make any findings of bad faith. In his complaint the buyer sought damages for breach of contract. As stated by this Court in Masonovich v. School District No. 1 (1978), 178 Mont. 138, 141, 582 P.2d 1234, 1235:

> "'Generally, there can be no recovery as damages of the expenses of litigation and attorney fees unless authorized by statute or contract.'"

As there is no contract or statute authorizing attorney fees in this case, attorney fees may not be awarded.

### CONCLUSION

We affirm the judgment of the District Court except as to attorney fees. We reverse the judgment on that issue.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-