FILED

05/31/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0237

DA 21-0237

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 105

LEWIS AND CLARK COUNTY, a political
subdivision of the State of Montana,

Petitioner and Appellee,

v.

PHILIP R. WIRTH, et al.,

Respondent and Appellant.

BRIDGE CREEK ESTATES HOMEOWNERS ASSOCIATION,

Cross-Claimant and Appellee,

v.

PHILIP R. WIRTH,

Cross-Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDV-2016-726
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Joseph P. Cosgrove, Hoyt & Blewett PLLC, Great Falls, Montana

For Appellee Bridge Creek Estates Homeowners Association:

Cherche Prezeau, Colin Phelps, J. Stuart Segrest, Christensen &
Prezeau, PLLP, Helena, Montana

For Lewis and Clark County:

Alan F. McCormick, Garlington, Lohn & Robinson, PLLP, Missoula, Montana

Leo J. Gallagher, Lewis and Clark County Attorney, C. Nicholas Hash, Deputy County Attorney, Helena, Montana

Submitted on Briefs: December 8, 2021

Decided: May 31, 2022

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Respondent and Cross-Defendant Philip R. Wirth appeals the November 16, 2018 order granting summary judgment in favor of Lewis and Clark County ("the County") and Bridge Creek Estates Homeowners Association ("the HOA") on the County's claim for declaratory judgment and on Wirth's counterclaim against the County, and the May 27, 2020 order granting summary judgment and attorney fees to the HOA. We address:

1. *Whether the District Court erred in its interpretation of § 2.2 of the Covenants by concluding Wirth is unambiguously prevented from further subdividing the lots retained by him within the Bridge Creek Estates Major Subdivision.*

2. *Whether the District Court erred by granting summary judgment to the County and dismissing Wirth's counterclaim for statutory damages under § 76-3-625(1), MCA.*

3. *Whether the District Court erred in its interpretation of § 7 of the Covenants as obligating Wirth to serve each lot within the Bridge Creek Estates Major Subdivision with dual water lines.*

4. *Whether the District Court prematurely granted attorney fees to the HOA.*

¶2 We reverse in part and affirm in part and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In February 2006, Wirth obtained approval to develop the Bridge Creek Estates Major Subdivision ("the Subdivision"). On February 23, 2006, Wirth recorded the original plat with the County that contained 100 residential lots and one large remainder lot retained by Wirth.[1] At this time, Wirth recorded the Declaration of Covenants, Conditions and Restrictions of Bridge Creek Estates ("the Covenants").

---

[1] The recorded plat differentiates between "Residential Lot Area" and "Remainder Lot Area." It notes the Subdivision contains 100 Residential Lots, one Public Park, and one Remainder Lot.

3

¶4     In 2007, Wirth submitted a proposal to the County to further subdivide Lot 23, one of the 100 residential lots in the Subdivision. As part of its review process, the County reviewed the Covenants. The County's associate planner generated a staff report indicating the proposed subdivision of Lot 23 would not violate any of the Covenants. Wirth did not move forward with the 2007 proposal to subdivide Lot 23.

¶5     In 2011, Wirth submitted a new proposal, seeking to subdivide and readjust the boundaries of eight unsold lots into eleven smaller lots, and to consolidate multiple unsold lots and the large remainder lot retained by Wirth into three larger lots: Lot 9A, Lot 11A, and Lot 101A. After holding a public meeting, and after considering "all testimony from the public, the preliminary plat application and supplements, [and] the staff report,"[2] the County conditionally approved the plat. The County did not indicate that the proposal would violate any of the Covenants. The County concluded that upon Wirth completing "recommended conditions of approval," the proposal would comply with "subdivision regulations."[3] The County granted final approval to the amended plat in 2013. Wirth recorded the amended plat in 2013, designating Lot 11A and Lot 101A "FOR FUTURE DEVELOPMENT."

---

[2] The staff report notes Wirth's proposal would, in part, "creat[e] two lots for possible future development," and further notes, "[t]he original subdivision was approved and final platted for 101 lots, 100 for single-family residential use and one for future development."

[3] One of the Lewis and Clark County Subdivision Regulations states, "The County may not approve a subdivision proposal that violates restrictive covenants or deed restrictions governing use of the affected property, unless the covenants are amended prior to or as part of the approval process." Lewis & Clark Cty. Subdiv. Regs. (Mont.) II.E. (2010).

**Further Subdivision of Lots**

¶6    In 2014, Wirth submitted a proposal for a second amended plat, seeking to subdivide the three large lots into fifty smaller lots. In its review of this proposal, the County interpreted the second sentence of § 2.2 of the Covenants as prohibiting further subdivision of any lot in the Subdivision, including Wirth's three large undeveloped lots. A new staff report noted "[d]uring review of the [2013] Amended Plat of Bridge Creek Estates Major Subdivision, Planning staff did not review the covenants and thus was not aware of the prohibition of further subdivision." In September 2015, the County conditionally approved Wirth's proposal but required him to amend § 2.2 of the Covenants by removing the prohibition on further subdivision of "any Lot." To amend the Covenants, Wirth needed to obtain an agreement of all owners of lots in the Subdivision. Wirth was unable to secure an agreement from all owners. Wirth requested the County remove this condition.

¶7    The County filed a petition for declaratory judgment that § 2.2 prohibits further subdivision of all lots, including those retained by Wirth, within the Subdivision. The HOA joined the lawsuit, also objecting to the further subdivision of Wirth's three large lots. Wirth responded seeking a declaratory judgment that § 2.2 did not apply to the lots he retained and filed counterclaims for negligent misrepresentation and statutory damages against the County under § 76-3-625, MCA.

¶8    The recorded Covenants contain the following relevant sections:

> WHEREAS, the Declarant wishes to place restrictions, covenants and conditions upon the Property for the use and benefit of himself as present Owner, and for the future Owners thereof, ensure the use of the Property for attractive residential purposes only . . . with no greater restriction upon its

5

free and undisturbed use than is necessary to ensure the same advantages to all property Owners.

NOW, THEREFORE, the Declarant hereby declares that all real property described herein shall be held, sold, and conveyed subject to the following covenants, conditions and restrictions, all of which *are for the purpose of* enhancing and protecting the value, desirability, and attractiveness of the Property *by providing a reasonably uniform plan for development* of the same as desirable residential property.

.     .     .

All provisions of this Declaration and any rules *shall apply to all Owners*, occupants, tenants, guests and invitees or anyone who may hereafter acquire any interest in any Lot . . . .

.     .     .

1.  DEFINITIONS

.     .     .

1.2 **"Property"** means the real property herein described in the Bridge Creek Estates Master Plan.[4]

1.3 **"Lot"** means any Lot of land shown in the Bridge Creek Estates Master Plan.

.     .     .

2.  LAND USE

2.1  The Property, and each and every Lot thereof, shall be used for single family residential purposes only.  There shall be no more than one single family dwelling constructed or located on each Lot.

2.2  Any Lot purchased from Declarant can be resold without restriction.  *No further subdivision of any Lot is permitted.*  Minor boundary adjustments which do not significantly change Lot size and to which adjacent Owners agree, is permitted.

---

[4] The document titled "Bridge Creek Estates Master Plan" does not exist.  The recorded original and amended plats are entitled "Bridge Creek Estates Major Subdivision" and "Amended Plat of Bridge Creek Estates Major Subdivision."

(Emphasis added.)

¶9 The District Court granted summary judgment to the County and the HOA regarding the interpretation of § 2.2 of the Covenants. The court held that the second sentence of § 2.2 prohibiting "further subdivision of any Lot" was unambiguous and applied to all lots, including those retained by Wirth. The court also granted summary judgment to the County on Wirth's statutory damages claim, finding that the County's interpretation of § 2.2 results in an unsupported claim for damages, and that the County's actions were not arbitrary, capricious, or unlawful. The court noted that the 2015 contingent approval was not a final agency decision.

### Dual Water Lines

¶10 After Wirth recorded the Covenants in 2006, he began developing the Subdivision. Wirth installed dual water lines to all lots in the Subdivision except eleven lots known collectively as Powder River Court.[5] When Wirth recorded the original plat, the plat noted that Lots 1-23, which include the lots in Powder River Court, would only be supplied with well water. When the lots were reconfigured with the 2013 amended plat, Wirth implemented a new water system design, approved by the Montana Department of Environmental Quality and the County Planning Board, that would supply water to Powder River Court with a single water line.

---

[5] The eleven lots in Powder River Court were created by the first amended plat by altering boundary lines and subdividing eight larger lots.

¶11 The Covenants contain a section regarding the water system to serve the Subdivision. Section 7 of the Covenants states in relevant part:

> Each Lot shall be served with two water systems operated by the Bridge Creek Estates Water Company: an irrigation system and a domestic water system. The domestic water system shall be connected to the dwelling and the irrigation to a yard hydrant(s).

¶12 After the County initiated the declaratory judgment claim, the HOA filed a crossclaim against Wirth, asserting he is in violation of § 7 of the Covenants to provide dual water lines to all lots in the Subdivision. Wirth responded that § 7 obligates either the property owners or the Bridge Creek Estates Water Company to serve each lot with a dual water system. The District Court granted summary judgment to the HOA, concluding § 7 of the Covenants imposed on Wirth, as the developer of the Subdivision, "the obligation and duty to install dual water lines to the lots within the subdivision, including those lots within the Powder River Court." The District Court based its decision on the plain language in the covenant and Wirth's conduct of providing dual water lines to other lots in the Subdivision.

¶13 On November 20, 2018, after the District Court entered summary judgment on the § 2.2 interpretation issue, the HOA moved for attorney fees, citing § 17 of the Covenants which provides that a prevailing party is entitled to reasonable attorney fees and costs "[i]n any action brought by the [HOA] or any Owner to enforce the provisions hereof." The HOA filed a motion for summary judgment on the dual water line issue on November 14, 2019, reasserting its right to attorney fees under § 17 of the Covenants. On May 27, 2020, in its order granting summary judgment to the HOA on the dual water line issue, the court

8

awarded the HOA its attorney fees for enforcing the Covenants but reserved its decision "[a]s to other remedies" to resolve the dual water line issue with the HOA members.

## STANDARDS OF REVIEW

¶14 We review de novo a district court's summary judgment ruling. *Creveling v. Ingold*, 2006 MT 57, ¶ 5, 331 Mont. 322, 132 P.3d 531. Like interpretations of contracts, a district court's interpretation of a restrictive covenant is a conclusion of law reviewed for correctness. *Creveling*, ¶ 5 (citing *Pablo v. Moore*, 2000 MT 48, ¶ 12, 298 Mont. 393, 995 P.2d 460). Summary judgment is appropriate when the moving party shows "a complete absence of any genuine issue as to all facts which are material in light of those substantive principles" that entitle the party to a judgment as a matter of law. *Rumph v. Dale Edwards, Inc.*, 183 Mont. 359, 365, 600 P.2d 163, 167 (1979) (citation omitted).

¶15 A district court's decision to award attorney fees "is reviewed for an abuse of discretion unless a contract requires an award of fees, in which case a district court lacks discretion to deny the request." *Hill Cty. High Sch. Dist. No. A v. Dick Anderson Constr., Inc.*, 2017 MT 20, ¶ 7, 386 Mont. 223, 390 P.3d 602 (citing *Wittich Law Firm, P.C. v. O'Connell*, 2013 MT 122, ¶ 15, 370 Mont. 103, 304 P.3d 375).

## DISCUSSION

1. *Whether the District Court erred in its interpretation of § 2.2 of the Covenants by concluding Wirth is unambiguously prevented from further subdividing the lots retained by him within the Bridge Creek Estates Major Subdivision.*

¶16 We employ principles of contract law when interpreting covenants. *Hillcrest Homeowners Ass'n v. Wiley*, 239 Mont. 54, 56, 778 P.2d 421, 422 (1989) ("When interpreting a restrictive covenant, this Court applies the same rules as those applicable to

9

contract interpretation."). We interpret, construe, and apply covenants to give effect to the intentions of the parties "where possible." *Bennett v. Hill*, 2015 MT 30, ¶ 28, 378 Mont. 141, 342 P.3d 691 (citing § 28-3-301, MCA; *Creveling*, ¶ 8). Words that are "wholly inconsistent" with the nature or main intention of restrictive covenants are to be rejected. Section 28-3-503, MCA. Restrictive covenants should be read together, "each clause helping to interpret the others," where "[p]articular clauses of the agreement are subordinate to the general intent of the contract." Sections 28-3-202, -307, MCA.

¶17 It is a fundamental rule that courts may look "not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made." *Rumph*, 183 Mont. at 368, 600 P.2d at 168 (quoting *Kintner v. Harr*, 146 Mont. 461, 472, 408 P.2d 487, 494 (1965)). "Where the language of a covenant is clear and explicit," extrinsic evidence is not considered, and "the Court must apply the language as written." *Creveling*, ¶ 8 (citation omitted); § 1-4-101, MCA (the court's role is not "to insert what has been omitted or to omit what has been inserted."). The general rule of excluding extrinsic evidence, however, "does not preclude consideration of surrounding circumstances" to initially determine whether an instrument contains an ambiguity. *Mary J. Baker Revocable Tr. v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 47, 338 Mont. 41, 164 P.3d 851. As a preliminary matter, courts may consider "objective evidence of 'the circumstances under which [the instrument] was made, including the situation of the subject of the instrument and of the parties to it.'" *Mary J. Baker Revocable Tr.*, ¶¶ 47, 55 (quoting § 1-4-102, MCA).

10

¶18 Whether an ambiguity exists is a question of law. *Creveling*, ¶ 8. "An ambiguity exists where the language of the contract, as a whole, could reasonably be subject to two different meanings," and is not necessarily created from a mere disagreement between the parties. *Czajkowski v. Meyers*, 2007 MT 292, ¶ 21, 339 Mont. 503, 172 P.3d 94 (citation omitted). Ambiguities in restrictive covenants should be resolved to allow free use of property. *Creveling*, ¶ 8 (citing *Newman v. Wittmer*, 277 Mont. 1, 6, 917 P.2d 926, 929 (1996)). The free use of the property, however, "must be balanced against the rights of the other purchasers in the subdivision." *Toavs v. Sayre*, 281 Mont. 243, 246, 934 P.2d 165, 167 (1997).

¶19 "When a contract is ambiguous, a factual question exists, and the finder of fact must determine what it means by considering the intention of the parties." *Bradley v. Crow Tribe of Indians*, 2005 MT 309, ¶ 28, 329 Mont. 448, 124 P.3d 1143 (citing § 28-3-306(1), MCA; *Klawitter v. Dettmann*, 268 Mont. 275, 281, 886 P.2d 416, 420 (1994)). If other tenets of contract interpretation cannot remove uncertainty in a contract, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Section 28-3-206, MCA. However, interpreting uncertainty against the drafter is "not a peremptory rule." *Travelers Ins. Co. v. Holiday Vill. Shopping Ctr. LP*, 280 Mont. 217, 224, 931 P.2d 1292, 1296-97 (1996).

¶20 The restrictive covenant at issue restricts land use of lots within the Subdivision, thereby creating a negative easement. *See Conway v. Miller*, 2010 MT 103, ¶ 17, 356 Mont. 231, 232 P.3d 390 (quoting *Nw. Improvement Co. v. Lowry*, 104 Mont. 289, 301, 66 P.2d 792, 794 (1934) ("A 'negative easement' is one the effect of which is not to authorize

11

the doing of an act by the person entitled to the easement, but merely to preclude the owner of the land subject to the easement from doing that which, if no easement existed, he would be entitled to do.")). "[A] negative easement is a nonpossessory interest in land that imposes a specific restriction on another's use of the other's own property. In modern American law, the historically distinct concept of a negative easement is subsumed into the concept of a restrictive covenant." *O'Keefe v. Mustang Ranches HOA*, 2019 MT 179, ¶ 16 n.5, 396 Mont. 454, 446 P.3d 509 (internal citations omitted).

¶21 When determining the scope of an easement created by a restrictive covenant, the court must also consider the "instrument of conveyance and any referenced subdivision plat, certificate of survey, or map of record," which must be sufficient "*together* to express clear and unambiguous intent" of the grantor and the extent of the easement with "reasonable certainty." *O'Keefe*, ¶ 18 (emphasis in original); s*ee also Blazer v. Wall,* 2008 MT 145, ¶ 31, 343 Mont. 173, 183 P.3d 84 (citing § 76-3-304, MCA) ("[W]hen land is sold with reference to a properly recorded plat, the plat becomes part of (i.e., is incorporated into) the document conveying the interest in land.").

¶22 Wirth argues the District Court erred by reading the second sentence of § 2.2 of the Covenants in isolation, and that it should be read as referring back to the first sentence which governs the permissible land use of a lot *purchased from Declarant*. Wirth further contends that the District Court erred by not considering the parties' prior conduct, including the 2013 amendment of the Subdivision, which resulted in the readjustment of boundaries, subdivision of larger lots, and reaggregation into three large lots. The County and the HOA respond that the District Court correctly concluded that the second sentence

12

of § 2.2 of the Covenants, prohibiting "further subdivision of any Lot," unambiguously applied to all lots, including those retained by Wirth. Further, if the Court were to find the language ambiguous, it must be construed against Wirth as the drafter of the Covenants.

¶23 The District Court erroneously concluded that the plain language of § 2.2 was unambiguous; therefore, it "need not refer to any extrinsic evidence to interpret the meaning of the covenant." Section 2.2, by prohibiting further subdivision, creates a negative easement. To determine the scope of the easement created by § 2.2, the court must not only review the Covenants, but also the related documents constituting the instrument of conveyance. Section 76-3-304, MCA; *O'Keefe*, ¶ 18. Under the definitions of "Property" and "Lot," the Covenants refer to the "Bridge Creek Estates Master Plan." This document does not exist. Rather, there are two recorded plats—the original plat recorded in 2006, which differentiates between "residential" lots and the "remainder" lot, and the amended plat recorded in 2013, which designates Lot 11A and Lot 101A "FOR FUTURE DEVELOPMENT." The court did not consider the recorded plats when it interpreted § 2.2 of the Covenants. The court did not identify to which plat the Covenants refer, if any. Further, the court did not reconcile the inconsistency between an ostensible blanket prohibition on further subdivision of any lot, with the language "FOR FUTURE DEVELOPMENT" distinctly printed across two of the lots retained by Wirth on the recorded amended plat.

¶24 Reading the entire instrument of conveyance to determine the applicability of § 2.2 to the lots retained by Wirth requires resolving an ambiguity. In reviewing the Covenants, the Court may consider "the circumstances under which [an instrument] was made." *Mary*

13

*J. Baker Revocable Tr.*, ¶ 53. The District Court incorrectly concluded the language was unambiguous by reading the second sentence of § 2.2 in isolation. Section 28-3-202, MCA. The court erred in failing to consider extrinsic evidence and by resolving the issue at summary judgment.

¶25 The County and the HOA argue that any ambiguity should be interpreted against Wirth in any event, since Wirth was the drafter of the Covenants. While this is true, the analysis is not so cut-and-dried. Although § 28-3-206, MCA, mandates an interpretation most strongly against Wirth, "that statute does not necessarily dictate the outcome of the court's deliberation after consideration of the extrinsic evidence." *Travelers Ins. Co.*, 280 Mont. at 225, 931 P.2d at 1297. This rule is not mechanically applied, elevating an interpretation against the drafter above the general intent and purpose of the contract. Section 28-3-206, MCA, states, that for uncertainty "not removed by parts 1 through 5 of this chapter," the court should interpret the contract "most strongly" against the drafter. If after employing these statutory rules governing interpretation of contracts, an ambiguity remains, the ambiguity would be interpreted most strongly against Wirth.

¶26 "Where the question of intent depends upon the construction of an unambiguous contract, the question is one for the court alone; however, where a contract term is ambiguous or obscure or uncertain of meaning, the interpretation of the language, and thus, the determination of the parties' real intent, is a matter to be left to the consideration of the [fact-finder]." *Klawitter*, 268 Mont. at 281, 886 P.2d at 420 (citing § 28-3-301, MCA; *Gray v. City of Billings*, 213 Mont. 6, 10, 689 P.2d 268, 270 (1984)). We reverse the

District Court's order of summary judgment and remand this matter for the District Court to resolve the ambiguity of § 2.2 consistent with this Opinion.

   *2. Whether the District Court erred by granting summary judgment to the County and dismissing Wirth's counterclaim for statutory damages under § 76-3-625(1), MCA.*

¶27 The District Court ruled in favor of the County's interpretation of § 2.2 of the Covenants, and as such, held the County did not act arbitrarily or capriciously when it approved the 2013 application or issued its contingent approval of the 2015 application. Wirth argues summary judgment was inappropriate given the number of material facts in dispute including whether the County inconsistently interpreted § 2.2 of the Covenants in 2013 and 2015, and whether the County was aware of Wirth's intention to further subdivide the large undeveloped lots when it issued its approval in 2013. Wirth contends that had he known the County would arbitrarily change its interpretation of § 2.2 in 2015, he would not have consolidated the unsold individual lots with his remainder lot into three larger lots "for future development" in 2013.

¶28 The County argues that the 2015 decision was not final, but contingent, and therefore Wirth's claim was not ripe. The County maintains that because its interpretation of § 2.2 prevailed, it did not act arbitrarily or capriciously in either the 2013 or 2015 decision. The County contends that even if the 2013 approval was arbitrary or capricious, Wirth's actions caused his damages because he drafted and recorded the Covenants.

¶29 Section 76-3-625(1), MCA, allows a party who "has filed with the governing body an application for a subdivision" to file a cause of action "to recover actual damages caused by a final action, decision, or order of the governing body . . . that is arbitrary or capricious."

15

The version of § 76-3-625(1), MCA, in effect at the time Wirth filed his counterclaim against the County in 2016 did not specify a time-limit to bring this action.[6] Regardless of whether the 2015 decision was final, Wirth's counterclaim for the 2013 decision was timely filed.

¶30     This Court reviews a district court's decision under § 76-3-625, MCA, to determine whether the record establishes the governing body acted arbitrarily, capriciously, or unlawfully. *Aspen Trails Ranch, LLC v. Simmons*, 2010 MT 79, ¶ 31, 356 Mont. 41, 230 P.3d 808.  A challenged decision is arbitrary or capricious if it is "random, unreasonable, or seemingly unmotivated, based on the existing record." *Kiely Constr., LLC v. City of Red Lodge*, 2002 MT 241, ¶ 69, 312 Mont. 52, 57 P.3d 836 (quoting *Silva v. City of Columbia Falls*, 258 Mont. 329, 335, 852 P.2d 671, 675 (1993)).  A reversal is not permitted "merely because the record contains inconsistent evidence or evidence which might support a different result." *Kiely Constr., LLC*, ¶ 69.  An action is unlawful "when it fails to comply with the requirements of applicable statutes." *Aspen Trails Ranch, LLC*, ¶ 31 (citing *Citizens for Responsible Dev. v. Bd. of Cty. Comm'rs*, 2009 MT 182, ¶ 26, 351 Mont. 40, 208 P.3d 876).

¶31     Under § 76-3-608(3)(b)(ii) and (iii), MCA, the County is required to review any proposed subdivision for compliance with the local subdivision regulations.  It is undisputed that under its local subdivision regulations, the County is prohibited from approving "a subdivision proposal that violates restrictive covenants or deed restrictions

---

[6] This statute was amended in 2017 and 2021.  There is now a 140-day time limit to file a claim after an agency action under subsection (1).

governing use of the affected property." Lewis & Clark Cty. Subdiv. Regs. (Mont.) II.E. (2010).

¶32    Wirth has identified several disputed facts that are material to the resolution of whether the County's action in approving the 2013 proposal and requiring an amendment of the Covenants in 2015 was arbitrary, capricious, or unlawful.  As we are remanding on the interpretation of § 2.2 of the Covenants, the County's argument that it could not have acted arbitrarily or capriciously with its interpretation of § 2.2 of the Covenants in 2015 no longer applies.  It is unclear in the record before us whether the County *did* consider the restrictive covenants in § 2.2 when it issued its 2013 decision, and if not, whether that failure was unlawful.  We note, for example, the third sentence of § 2.2 of the Covenants only permits "[m]inor boundary adjustments which do not significantly change Lot size and *to which adjacent Owners agree*" (emphasis added).  Yet, the County's 2013 decision allowed Wirth to adjust boundaries without obtaining Owner agreements.  Finally, given our reversal of issue one, it is now unclear whether, when considering the extrinsic evidence, Wirth will be allowed to further subdivide the three large lots, and if so, whether and to what extent he is entitled to damages.

¶33    Whether the County's approval of the 2013 proposal resulted in damages to Wirth that he otherwise would have avoided, whether the County actually considered the Covenants as required in 2013, and whether the County's subsequent interpretation of § 2.2 in 2015 amounts to arbitrary, capricious, or unlawful action all involve disputed material facts.  The District Court erred by granting summary judgment on this issue.

17

*3. Whether the District Court erred in its interpretation of § 7 of the Covenants as obligating Wirth to serve each lot within the Bridge Creek Estates Major Subdivision with dual water lines.*

¶34 The District Court granted summary judgment to the HOA after interpreting § 7 of the Covenants as "a promise to potential lot owners that each lot will be served by dual water lines." On appeal, Wirth no longer disputes that § 7 imposes an obligation on him as the developer. Wirth argues that notwithstanding his obligation to install dual water lines, his performance is excused under the doctrine of impossibility. He contends the District Court failed to address multiple genuine issues of material fact as to whether it would be impossible or impracticable to comply with § 7 of the Covenants. The HOA contends that the doctrine of impossibility does not apply because Wirth's failure in the first instance caused the condition that renders installation of the dual water lines burdensome.

¶35 In general, "where a party to a contract obligates himself to a legal and possible performance, he must perform in accordance with the contract terms." *Cape-France Enters. v. Estate of Peed*, 2001 MT 139, ¶ 17, 305 Mont. 513, 29 P.3d 1011 (quoting *Barrett v. Ballard*, 191 Mont. 39, 44, 622 P.2d 180, 184 (1980)). However, under the doctrine of impossibility or impracticability, a court may grant relief in "[a]n extraordinary circumstance" that makes "performance so vitally different from what was reasonably to be expected as to alter the essential nature of that performance." *Cape-France Enters.*, ¶ 21.

¶36 For the doctrine of impossibility to apply, the party asserting it must show that "performance is made impracticable *without his fault* by the occurrence of an event the

18

non-occurrence of which was a basic assumption on which the contract was made." *Cape-France Enters.*, ¶ 22 (quoting Restatement (Second) of Contracts, § 261). The party "must demonstrate that he took virtually every action within his powers to perform his duties under the contract." *Miller v. Titeca*, 192 Mont. 357, 363, 628 P.2d 670, 674 (1981) (citing *Smith v. Zepp*, 173 Mont. 358, 365-66, 567 P.2d 923, 927 (1977) (superseded on other grounds in *Garretson v. Mountain W. Farm Bureau Mut. Ins. Co.*, 234 Mont. 103, 105, 761 P.2d 1288, 1289 (1988))).

¶37 Wirth's reliance on the doctrine of impossibility is misplaced. The facts surrounding which lots were provided a dual water line, and which lots were not, are not in dispute. Wirth connected dual water lines to all the lots in the Subdivision except the lots in Powder River Court. After the 2013 amendment, Wirth implemented a single water line to service that area. Wirth notes that many lot owners have defeated the purpose of the dual lines by connecting the irrigation and domestic water system on their lots. He argues to install dual lines in Powder River Court now would be extremely expensive and burdensome, requiring every lot owner to dig up the water lines to determine how they were connected. Wirth contends there is no functional benefit to the Powder River Court lot owners by running the second line because, as a result of other lot owners connecting the two lines, an extra line would not increase water volume or pressure. But if Wirth had installed dual lines to all lots as § 7 of the Covenants required and ensured all lot owners correctly connected to the dual water system, these inconveniences would not have arisen. Wirth failed to fulfill the promise of § 7 of the Covenants, and it is his failure that has made

19

the remedy burdensome. Wirth has failed to establish that "he took virtually every action within his powers to perform his duties." *Miller*, 192 Mont. at 363, 628 P.2d at 674.

¶38 The District Court did not err in granting summary judgment to the HOA. There are no material facts in dispute as to whether § 7 of the Covenants creates an obligation for Wirth to provide all lots in the Subdivision with dual water lines. We affirm the District Court's decision and remand for further proceedings including a determination as to the best remedy.[7]

   *4. Whether the District Court prematurely granted attorney fees to the HOA.*

¶39 The District Court granted attorney fees to the HOA "for enforcing the covenants." Wirth appeals this order, arguing it was premature because there had not been an affirmative judgment at the conclusion of the entire case. The HOA asserts that it is entitled to attorney fees under § 17 of the Covenants and the District Court did not abuse its discretion in awarding the fees after it found in favor of the HOA in both the dual water lines claim and the interpretation of § 2.2 claim.

¶40 A court must award attorney fees if "a contract provides for their recovery." *Hill Cty. High Sch. Dist. No. A*, ¶ 27. Section 17 unambiguously entitles the prevailing party to attorney fees for enforcing the provisions of the Covenants. The HOA's involvement in this litigation on both the issues of the interpretation of § 2.2 and the dual water lines has been to enforce the provisions of the Covenants.

---

[7] The District Court reserved its decision as to what remedies are available to HOA members.

20

¶41    An award of attorney fees may only be granted to the prevailing party, meaning "the one who has an affirmative judgment rendered in his favor at the conclusion of the entire case." *Schmidt v. Colonial Terrace Assocs.*, 215 Mont. 62, 68, 694 P.2d 1340, 1344 (1985) (quoting *Jordan v. Elizabethan Manor*, 181 Mont. 424, 434, 593 P.2d 1049, 1055 (1979)). As we are reversing issue one, "the entire case here has *not* been concluded as between these two parties." *Jordan*, 181 Mont. at 434, 593 P.2d at 1055 (emphasis in original).

¶42    Because an affirmative judgment as to all the issues in dispute has not been entered in this case, we reverse the District Court's order awarding attorney fees to the HOA as premature at this time.

## CONCLUSION

¶43    We reverse the District Court's order granting summary judgment on the interpretation of § 2.2 of the Covenants and the order granting summary judgment on Wirth's counterclaim under § 76-3-625(1), MCA, and remand for further proceedings consistent with this Opinion.  We affirm the District Court's order that Wirth is obligated to service all lots, including those in Powder River Court, with a dual water line system. We reverse the District Court's award of attorney fees to the HOA pending the final resolution of this matter.

                                        /S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR