FILED

09/02/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0408

DA 24-0408

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 198

HEIDI A. GABERT,

       Plaintiff and Appellee,

    v.

GARRY DOUGLAS SEAMAN,

       Defendant and Appellant,

DAWN FREEMAN,

       Intervenor and Appellee.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                 In and For the County of Lincoln, Cause No. DV-22-95
                 Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Reid Perkins, Dillon Kato, Worden Thane P.C., Missoula, Montana

       For Appellee Heidi A. Gabert:

           David B. Cotner, Cotner Ryan Blackford, PLLC, Missoula, Montana

       For Appellee Dawn Freeman:

           David R. Paoli, Paoli Law Firm P.C., Missoula, Montana

                       Submitted on Briefs:  August 6, 2025

                             Decided:  September 2, 2025

Filed:

                   _____
                             Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Garry Douglas Seaman appeals the Nineteenth Judicial District Court, Lincoln County's June 7, 2024 Order & Opinion Re Motion to Amend Judgment (Amended Order). The District Court amended its February 20, 2024 Order Regarding Approval of Designated Settlement Fund (DSF Order) pursuant to Heidi A. Gabert and Intervenor Dawn Freeman's M. R. Civ. P. 59(e) motion, striking a provision in the DSF Order that reserved settlement funds for the purpose of paying Seaman's capital gains taxes.

¶2    We restate and address the following issue:

*Did the District Court abuse its discretion by amending the Designated Settlement Fund Order on the basis that the settlement agreement's tax payment provision was ambiguous and the parties did not intend to reserve settlement funds to pay capital gains taxes?*

¶3    We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    On May 21, 2022, Seaman shot and killed James Preston Freeman and seriously wounded Heidi Gabert (Gabert). Gabert had recently terminated her romantic relationship with Seaman, with whom she shares a minor child. Seaman was arrested and criminally charged with deliberate homicide, attempted deliberate homicide, and tampering with evidence. Gabert and James's spouse, Dawn Freeman (Freeman), sued Seaman for civil damages resulting from the shooting. A few weeks after Gabert filed her Complaint, Gabert applied to place all of Seaman's assets in a receivership, alleging such action was necessary to prevent the improper transfer and sale of Seaman's assets during the pendency of the civil suit. Freeman joined Gabert's application for receivership.

2

¶5     The District Court granted the application and entered an order appointing attorney Christy Brandon (Receiver) as the receiver of Seaman's property (Order Appointing Receiver). The Order Appointing Receiver defined Seaman's property as "all property and assets owned by Garry Seaman, individually or jointly with others." The primary duties of the Receiver were to "prevent waste, preserve the Property, take any action to maximize the value of the Property," and collect all earnings, rents, profits, and income derived from the Property. The Order Appointing Receiver empowered her to "[p]ay all required taxes relating to the Property" but placed "no obligation" upon the Receiver "to prepare or file federal or state income tax returns" for Seaman or his businesses. After a hearing, the District Court made the receivership permanent and reaffirmed the terms of the Order Appointing Receiver.

¶6     After several months of negotiations, the parties signed a memorandum of understanding (MOU) on October 5, 2023, which settled the civil claims and resulted in the entry of two $10 million judgments against Seaman in favor of Gabert and Freeman, respectively.[1] Gabert and Freeman agreed to: (1) forgo criminal restitution; (2) inform the court presiding over Seaman's criminal case that they did not object to the proposed plea agreement and refrain from testifying at Seaman's sentencing hearing; and (3) prioritize ahead of their judgments the payment of certain legal fees incurred by Seaman.

¶7     In exchange, Seaman agreed to liquidate all his assets to satisfy the judgments. The MOU allowed Seaman to retain the agreed value of his homestead exemption: $378,560.

---

[1] The parties do not dispute that the MOU formed a binding settlement agreement.

The MOU provided for the appointment of a Liquidation Receiver. The MOU addressed the Liquidation Receiver's obligations by incorporating some of the Receiver's duties set forth in the Order Appointing Receiver, including the paragraph concerning payment of taxes related to the Property.

¶8 On December 22, 2023, Gabert and Freeman moved the District Court to establish a designated settlement fund (Settlement Fund) pursuant to United States Internal Revenue Code, 26 U.S.C. § 468B. Gabert and Freeman contended the Settlement Fund was necessary to "create an independent entity to facilitate the liquidation of Seaman's assets in accordance with the MOU . . . and to facilitate the coordinated efforts of Gabert and Freeman, as judgment creditors, in collecting the Judgments." Seaman objected, arguing the Settlement Fund proposal violated the MOU's incorporated tax payment provision because the Settlement Fund was designed to "ensure that capital gains taxes [would] not be paid out of proceeds from the sale of [Seaman's] assets."

¶9 On February 20, 2024, the District Court issued its DSF Order, approving the proposed Settlement Fund but also requiring the Liquidation Receiver to reserve funds from the sales of Seaman's capital assets to pay Seaman's tax liability associated with each sale. After reviewing the correspondence submitted by the parties, the court determined "the proposed DSF Trust was specifically designed to pay no capital gains arising from the liquidation of assets." The court interpreted "taxes relating to the Property" to unambiguously include Seaman's capital gains taxes and prioritized payment of those taxes over Gabert and Freeman's judgments.

4

¶10 On March 19, 2024, Gabert and Freeman timely moved to amend the DSF Order pursuant to M. R. Civ. P. 59(e). Gabert and Freeman argued the District Court manifestly erred in two ways: (1) by reading the tax payment provision in isolation, rather than the MOU as a whole, to support its interpretation; and (2) by finding that the Settlement Fund was created to avoid payment of Seaman's capital gains taxes. Seaman objected, asserting that Rule 59 relief was not justified because the court correctly interpreted the MOU. Following an evidentiary hearing, the District Court granted Gabert and Freeman's Rule 59(e) motion, agreeing that the DSF Order was based on manifest errors of law and fact, and issued an Amended Order. The Amended Order struck the DSF Order provision that required the Liquidating Receiver to reserve funds for payment of Seaman's capital gains taxes.

## STANDARDS OF REVIEW

¶11 We review a district court's ruling on a motion for post-judgment relief pursuant to M. R. Civ. P. 59(e) for an abuse of discretion. *Folsom v. Mont. Pub. Emps. Ass'n*, 2017 MT 204, ¶¶ 18, 59, 388 Mont. 307, 400 P.3d 706. An abuse of discretion occurs if the lower court based its decision on a clearly erroneous finding of fact, an erroneous conclusion or application of law, or if the court otherwise acted arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice. *Dodds v. Tierney*, 2024 MT 48, ¶ 9, 415 Mont. 384, 544 P.3d 857 (citation omitted).

5

¶12    Settlement agreements are governed by provisions of contract law. *Murphy v. Home Depot*, 2012 MT 23, ¶ 8, 364 Mont. 27, 270 P.3d 72.  The interpretation and construction of a contract, including whether an ambiguity exists, is a question of law that we review for correctness.  *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 2013 MT 179, ¶ 25, 370 Mont. 529, 305 P.3d 781 (citations omitted).  If the lower court concludes an ambiguity exists, then the court's "interpretation requires a determination of a question of fact: the real intention of the parties at the time of contracting."  *In re Marriage of Mease*, 2004 MT 59, ¶ 30, 320 Mont. 229, 92 P.3d 1148.  We review a district court's findings of fact for clear error.  *Marriage of Mease*, ¶ 30.  A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the lower court misapprehended the effect of the evidence, or if this Court's independent review of the records leaves us definitely and firmly convinced that a mistake has been made.  *Performance Mach. Co. v. Yellowstone Mt. Club, LLC*, 2007 MT 250, ¶ 11, 339 Mont. 259, 169 P.3d 394.

**DISCUSSION**

¶13    *Did the District Court abuse its discretion by amending the Designated Settlement Fund Order on the basis that the settlement agreement's tax payment provision was ambiguous and the parties did not intend to reserve settlement funds to pay capital gains taxes?*

¶14    Although M. R. Civ. P. 59(e) allows for amendment of judgments in the "interests of justice," the rule does not specify what grounds justify relief.  *Folsom*, ¶ 59.  We have held Rule 59(e) relief is available in the court's discretion only in extraordinary circumstances, including when—as determined by the District Court in this case—

6

amendment is warranted to "correct manifest errors of law or fact upon which the judgment is based." *Folsom*, ¶ 59 (citation and internal quotations omitted).

¶15 Seaman contends the District Court abused its discretion by granting Gabert and Freeman's Rule 59(e) motion. Seaman asserts amendment of the DSF Order was unnecessary, as the court did not err as a matter of law in the first instance. Seaman argues the court correctly concluded that the tax payment provision was unambiguous and obligated the Liquidating Receiver to reserve liquidation proceeds to pay Seaman's capital gains taxes. In the event this Court determines the MOU is ambiguous, Seaman argues in the alternative that the District Court erred by not interpreting the MOU most strongly against the drafters, Gabert and Freeman.

¶16 A contract must be interpreted in a manner that gives "effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Section 28-3-301, MCA. When interpreting a written contract, the parties' mutual intention is to be ascertained from the writing alone if possible. Section 28-3-303, MCA. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. "If the terms of a contract are unambiguous, a court must apply the language of the contract as written." *Kalispell Aircraft Co., LLC v. Patterson*, 2019 MT 142, ¶ 17, 396 Mont. 182, 443 P.3d 1100 (citation and internal quotations omitted).

¶17 Whether an ambiguity exists is determined on an objective basis. *Riehl v. Cambridge Court GF, LLC*, 2010 MT 28, ¶ 26, 355 Mont. 161, 226 P.3d 581. Mere

7

disagreement between the parties "as to the meaning of a contract provision does not necessarily create an ambiguity." *Kuhr v. City of Billings*, 2007 MT 201, ¶ 18, 338 Mont. 402, 168 P.3d 615. "Rather, an ambiguity exists only if the language is susceptible to at least two reasonable but conflicting meanings." *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 20, 338 Mont. 41, 164 P.3d 851.

¶18 The District Court initially determined the phrase "[p]ay all required taxes relating to the Property" was reasonably subject to only one interpretation: the Liquidating Receiver was obligated to withhold funds sufficient to pay Seaman's capital gains taxes. In its Amended Order the District Court reached the opposite conclusion. The court reasoned that it had erroneously interpreted the meaning of "relating to" in isolation, when it should have considered the phrase in the context of the MOU terms that expressly limited the Liquidating Receiver's duties to Seaman. The court concluded an ambiguity existed because the MOU itself did not resolve the conflict between the language restricting the Liquidating Receiver's obligations and the broad "relating to" language.

¶19 Seaman claims the language in the MOU allowing him to retain his homestead exemption shows the parties intended for capital gains taxes to fall within the meaning of "taxes related to the Property." We are unpersuaded that the language excepting Seaman's homestead exemption provides such clarity. Seaman argues that, by carving out his homestead exemption, he "clearly negotiated for a monetary benefit that he would obtain and keep;" therefore, he argues the exemption would be meaningless if the funds were

8

consumed by capital gains taxes. It is true that we endeavor to interpret a contract in a manner that gives "effect to every part if reasonably practicable." Section 28-3-202, MCA. But the homestead exemption is not rendered meaningless simply because Seaman may have to expend those funds on capital gains taxes resulting from the settlement liquidation sales. Seaman will receive $378,560 under the terms of the MOU, regardless of how that money is spent after he receives it.

¶20 Seaman argues this Court should interpret the phrase "relating to" broadly, so as to require payment of Seaman's capital gains taxes. In support of his argument, Seaman cites *Black's Law Dictionary*, as well as precedent from this Court and other jurisdictions that have adopted expansive interpretations of the phrase when construing statutes and arbitration clauses. The problem with Seaman's argument, though, is that interpreting "relating to" in the manner he and the authorities suggests neither renders the MOU unambiguous nor resolves the ambiguity identified by the District Court.

¶21 The District Court correctly concluded that the MOU, when considered as a whole, is ambiguous as to whether "taxes related to the Property" includes Seaman's capital gains taxes. We begin by identifying the relevant language in the MOU.

¶22 Paragraph 1 of the MOU states: "All assets of Garry Seaman, of any nature, and however owned, shall be liquidated to satisfy the judgments [in favor of Gabert and Freeman], excepting the amount of $378,560.00, the agreed amount of Seaman's Homestead Exemption."

9

¶23 Paragraph 2 of the MOU provides, in relevant part: "Judgments shall be entered against Seaman for $10 Million in favor of Gabert and shall also be entered against Seaman for $10 Million in favor of Freeman . . . . The judgments shall share equal priority despite which Judgment is filed first."

¶24 Paragraph 6(c)(iii) strictly limits the Liquidating Receiver's duties to Seaman: "Except providing the Homestead Exemption amount to Seaman, the Liquidation Receiver's sole responsibility is to Gabert and Freemen [sic] and he/she shall owe no other duty to Seaman."

¶25 Paragraph 6(vi) instructs the Liquidating Receiver to distribute the settlement proceeds: "All proceeds generated from the sale of Seaman's assets shall be transferred to a Control Account established by Gabert and Freeman to be distributed pursuant to [MOU] Paragraphs 1 and 2 above to satisfy such judgments, the judgment arising from [Gabert's child support case against Seaman], and the homestead exemption."

¶26 Paragraph 6(c)(v), incorporates certain duties listed in the Order Appointing Receiver, including Paragraphs 5 and 11, so that they apply to the Liquidating Receiver. Paragraph 5 requires payment of "all required taxes relating to the Property," while Paragraph 11 states, "[t]he Receiver shall have no obligation to prepare or file federal or state income tax returns for Garry Seaman or any of his businesses."

¶27 The MOU expressly reserves funds to compensate Seaman for only the amount of his homestead exemption, requires the Liquidating Receiver to distribute all proceeds to satisfy Gabert and Freeman's judgments subject *only* to the homestead and child support

reservations, and places no obligation upon the Liquidating Receiver to file income tax returns on behalf of Seaman. This language could reasonably be interpreted to entitle Seaman only to distribution of the homestead exemption. Even applying the broad interpretation of the term "related to," as Seaman argues, does not dispel the ambiguity. The tax payment provision would still conflict with the MOU terms in Paragraphs 1, 2, 6(c)(iii), 6(vi), and 6(c)(v)(11) because it would expand the Liquidating Receiver's obligations to Seaman beyond those expressly listed. The MOU does not reveal whether the tax payment provision implicitly expands the Liquidating Receiver's duties and never explains how to reconcile the express competing duties the Liquidating Receiver owes to Gabert and Freeman. The District Court did not err by concluding an ambiguity existed.

¶28 When the language of a contract is ambiguous, the fact finder must determine the intention of the parties and may consider extrinsic evidence demonstrating the parties' intent. *Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 26, 350 Mont. 516, 212 P.3d 264.

¶29 Seaman asserts that some of the evidence presented at the Rule 59(e) hearing could be construed to support his contention that the parties intended to reserve settlement funds for payment of Seaman's capital gains taxes. Our task, however, is to determine whether the District Court's findings of fact are clearly erroneous. *Marriage of Mease*, ¶ 30. We do not "substitute our judgment for that of the trial court regarding the credibility or weight to be given to the evidence, nor does this Court review the record to determine whether evidence would support a different finding." *In re K.H.*, 2012 MT 175, ¶ 19, 366 Mont. 18, 285 P.3d 474. In this case, the District Court reviewed the extrinsic evidence of the parties'

negotiations admitted without objection at the Rule 59(e) hearing and found the parties did not intend to reserve any settlement funds for the purpose of satisfying Seaman's capital gains tax liability. The District Court based its finding on evidence of the parties' negotiations and testimony from counsel and the parties regarding their intent. Based on our independent review of the record, we cannot determine that the District Court's finding as to the parties' intent is clearly erroneous.

¶30 Seaman argues the District Court erred by failing to apply a rule of contract interpretation, § 28-3-206, MCA. Applying that statute, Seaman argues the ambiguity in the MOU should be construed against Gabert and Freeman, as they were the parties that drafted—and incorporated into the MOU—the tax payment provision in the Order Appointing Receiver.

¶31 "If other tenets of contract interpretation cannot remove uncertainty in a contract, the 'language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.'" *Lewis & Clark Cnty. v. Wirth*, 2022 MT 105, ¶ 19, 409 Mont. 1, 510 P.3d 1206 (quoting § 28-3-206, MCA). But interpreting an ambiguity against the drafter "is not a peremptory rule." *Wirth*, ¶ 19 (citation and internal quotations omitted). This rule "does not necessarily dictate the outcome of the court's deliberation after consideration of the extrinsic evidence." *Wirth*, ¶ 25 (citation and internal quotations omitted). In this case, the District Court determined it was able to resolve the ambiguity in the MOU by considering extrinsic evidence to discern the intent of the parties and the purpose of the MOU. A court only needs to turn to § 28-3-206, MCA, only when an

ambiguity remains after it exhausts the other statutory rules of interpretation. *Wirth*, ¶ 25. The District Court did not err by finding the parties did not intend to reserve funds from the liquidation to pay Seaman's capital gains taxes.

## CONCLUSION

¶32 The District Court did not abuse its discretion by amending its DSF Order to strike the provision that required the Liquidating Receiver to reserve funds to pay Seaman's capital gains taxes. In its Amended Order, the District Court did not err by determining that the MOU was ambiguous, and its finding as to the parties' intent was not clearly erroneous. The District Court's June 7, 2024 Order & Opinion Re Motion to Amend Judgment is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

13